**Leaanne KLENTZMAN and Carter Publications, Inc. d/b/a The West Fort Bend Star, Inc., Appellants,**

v.

**Wade BRADY, Appellee.**

No. 01–07–00520–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 31, 2009.

Charles L. Babcock, John Kiley Edwards, Jackson Walker, LLP, Houston, TX, for Appellant.

John Zavitsanos, Joseph David Sibley IV, Ahmad, Zavitsanos & Anaipakos, P.C., Houston, TX, for Appellee.

Panel consists of Justices KEYES, ALCALA, and TAFT.*

## OPINION

TIM TAFT, Justice (Retired).

LeaAnne Klentzman ("Klentzman") and Carter Publications, Inc. d/b/a The West Fort Bend Star, Inc. ("the Star") (together, "appellants"), bring this interlocutory appeal complaining that the trial court erred in denying summary judgment relief

in a libel suit brought by appellee, Wade Brady ("Wade"). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(6) (Vernon 2008).[1] In seven issues, appellants assert that (1) Wade failed to produce more than a scintilla of probative evidence to raise a genuine issue of material fact on the element of falsity, or, alternatively, appellants conclusively negated the element of falsity by establishing the substantial truth of the article; (2) Wade failed to produce more than a scintilla of probative evidence to raise a genuine issue of material fact on the element of actual malice, or, alternatively, appellants conclusively negated actual malice; and (3) a portion of the article was an expression of opinion and not actionable as defamation. We affirm the denial of summary judgment.

## Background

Wade is the son of Craig Brady ("Chief Brady"), chief deputy sheriff for Fort Bend County. The Star is a newspaper in Fort Bend County and Klentzman is one of its reporters. From August 2001 through May 2002, the Star published a number of opinion columns that included references to various incidents involving Chief Brady's sons, Wade and Cullen Brady, and Chief Brady's actions relative to such incidents or on behalf of his sons. None of those columns are the subject of the suit underlying this appeal. Among the incidents described in the opinion columns were the ticketing of Wade by sheriff's deputies for a minor-in-possession of

---

* Justice Tim Taft, who retired from the First Court of Appeals effective June 1, 2009, continues to sit by assignment for the disposition of this case, which was submitted on May 6, 2008.

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(6) (Vernon 2008) (authorizing interlocutory appeal from denial of motion for summary judgment "that is based in whole or in part upon a claim against or defense by a member of the electronic or print media, act-

ing in such capacity, or a person whose communication appears in or is published by the electronic or print media, arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article I, Section 8, of the Texas Constitution, or Chapter 73"); *Belo Corp. v. Publicaciones Paso Del Norte, S.A. De C.V.*, 243 S.W.3d 152, 157 (Tex.App.-El Paso 2007, pet. denied).

alcohol ("MIP") charge,[2] and the stop and detention of Cullen and Wade in their driveway by a Department of Public Safety ("DPS") trooper who had followed them to investigate suspected erratic driving by Cullen. The opinion columns also described various actions that Chief Brady had allegedly taken on behalf of his sons, including conducting numerous tape-recorded meetings with the deputies who had been present when Wade was ticketed for MIP in order to ask whether the deputies had been "ugly" when ticketing Wade.

On January 15, 2003, the Star published an article, written by Klentzman, entitled, "Deputy Brady's tape collecting called 'Roadside Suppression.'" This article ("the Article") is the subject of this suit. The Article:

- stated that since November 21, 2002, Chief Brady had been collecting audiotapes from deputies regarding Wade's 2001 MIP charge;

- recalled one of the incidents previously recounted in one of the columns involving Wade's report of a stolen cell phone and Chief Brady's pursuit of the man who had Wade's cell phone;

- described testimony from the August 2002 trial of Wade's MIP charge regarding the circumstances leading up to the ticket;

- noted that MIP citations are not uncommon, but called Wade's unique because Chief Brady "continually made contact with the officers involved," stating that, "[a]ccording to officers, the issue would have been moot if everything had just ended with the ticket";

- recalled the audio-taped meetings that Chief Brady had held with the deputies who issued the ticket, and

described Chief Deputy Brady's conduct on the audiotapes as well as other details related to the meeting, basing some of the details on testimony from the August 2002 trial;

- stated that "[p]ersonnel of the sheriff's office [had] dubbed the numerous twilight meetings [with the ticketing deputies] held in various parking lots ... to be 'roadside suppression hearings,' making jest of a legal maneuver by defense lawyers to keep evidence out of court;"

- described the circumstances of one of these meetings, which included the Sheriff's participation;

- stated that "[d]uring this 'Roadside Suppression Hearing' another incident with Wade and Cullen Brady was unfolding in [Chief Brady's] driveway," namely, that "Brady's sons had led a DPS Trooper from the streets of Rosenberg winding down narrow roads all the way to their riverside home";

- described that "in the DPS tape [of the stop] viewed by the Star ... Wade Brady was so unruly and intoxicated that the Trooper had to handcuff him and place him the backseat of the police car for safety"; and described other aspects of the stop based on the Star's review of the tape;

- stated that an order of expunction had been signed in a justice of the peace court on November 21, 2002, but that there was "some controversy over the validity of the order"; cited alleged text from a statute requiring courts presiding over cases where a defendant had been acquitted to enter an order of expunction within 30 days; noted that the order

2. Wade was later acquitted of the charge and an expunction order entered.

was signed "59 days" late; and quoted a lawyer who said that the order was void and that documents were going to be filed to get the order set aside;

■ stated that Chief Deputy Brady had, since November 21, 2002, used the expunction order as legal authority to collect all the audio-tapes of his meetings with those deputies who issued Wade the MIP ticket; and cited Bud Childers, Fort Bend County Attorney, as stating that Chief Brady could not legally use the expunction order to confiscate the tapes from the deputies because the tapes were outside of the scope of the order;

■ suggested that "it should be glaringly apparent why the officers involved in the MIP incident with Wade Brady were intimidated when their boss Chief Deputy Craig Brady notified them that he had an order of expunction and demanded any and all audio tapes or notes from the incident in their possession"; and stated that the deputies had been ordered to turn over the tapes and had complied, "feeling that they had no choice";

■ concluded with the statement that "[f]or now, the 'Roadside Suppression Hearings' have ended with personnel at the sheriff's office just wondering when the other shoe will drop."

## Procedural History

 Wade brought suit against appellants for libel[3] and libel per se[4] based on statements in the January 15, 2003 article. He alleged that appellants published a writing that injured his reputation by "omitt[ing] material facts and therefore creat[ing] a misleading presentation of the factual circumstances regarding [his] trial and the unrelated stop by the DPS trooper." He asserted that "[m]any of the statements in the [ ] article [had] no basis in fact and [were] nothing other than deliberate lies," that appellants knew that the writing was untrue, and that appellants had made the writing with malice and the intent to cause him harm and injury.

Wade further alleged that appellants had portrayed him "as engaging in criminal activity," thus subjecting themselves to a claim of libel per se. As to the libel per se claim, Wade asserted that an ordinary person would have drawn a reasonable conclusion from the article that he had committed a criminal act, namely, that he had "engaged in a violation of the minor in possession statute, circumvented Texas law, and was the beneficiary of acts of official oppression."

---

**3.** Libel is
 a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury.
 Tex. Civ. Prac. & Rem.Code Ann. § 73.001 (Vernon 2005).

**4.** A statement that is libel per se is so obviously hurtful that it does not require proof of injury in order to be actionable. *Columbia Valley Reg. Med. Ctr. v. Bannert*, 112 S.W.3d 193, 199 (Tex.App.-Corpus Christi 2003, no pet.); *Knox v. Taylor*, 992 S.W.2d 40, 50 (Tex. App.-Houston [14th Dist.] 1999, no pet.). "A false statement which charges a person with the commission of a crime is libelous per se." *Leyendecker & Assoc., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex.1984) (citing *Christy v. Stauffer Publ'ns*, 437 S.W.2d 814 (Tex.1969)).

Appellants filed a general denial answer and asserted a number of defenses, including that the statements were not materially false and were true or substantially true; some of the statements were non-actionable opinion, rhetoric, or hyperbole; some of the statements were privileged under Texas Civil Practice and Remedies Code sections 73.002(b)(1) and (2); and Wade was a limited purpose public figure thus requiring appellant to prove that the statements were published with constitutional actual malice, which appellants did not do.

Appellants filed a motion for summary judgment, which the trial court granted in part and denied in part.[5] About eighteen months later, appellants filed a second motion for summary judgment, the denial of which gave rise to this appeal. In their second motion for summary judgment, appellants asserted that:

- Wade was a limited purpose public figure as a matter of law and so had the burden to show that the speech at issue was false;

- Conversely, on summary judgement, a showing of substantial truth by the defendant precludes liability;

- As a limited purpose public figure, Wade had to prove the speech was published with actual malice, not just negligence; and

- appellants negated actual malice as a matter of law through attached affidavits.

Appellants then argued that they were entitled to summary judgment as a matter of law on the following "traditional"[6] grounds:

(1) "The Article and the statements complained of by [Wade] are true or substantially true as a matter of law, thus negating an essential element of [Wade's] cause of action;

(2) "[Wade] is a limited purpose public figure";

(3) As a matter of law, [appellants] did not publish the Article with actual malice; and

(4) "The statement in the Article, '[i]n the DPS videotape viewed by the Star and then later obtained through the Freedom of Information Act, Wade Brady was so unruly and intoxicated that the Trooper had to handcuff him and place him in the backseat of the police car for safety,' is opinion and, therefore non-actionable under Texas law.' "

Appellants also argued that they were entitled to summary judgment on the following "no-evidence"[7] grounds, asserting the want of evidence "of the following elements of [Wade's] defamation cause of action":

(1) material falsity; and

(2) actual malice.

The second motion for summary judgment was heard by an associate judge who issued an order denying the motion on both its traditional and no-evidence summary judgment grounds.[8] The associate

---

**5.** The trial court granted the summary judgment as to the following statement in the article:

> The trooper attempted to perform field sobriety tests on Cullen Brady, the driver, but Cullen was uncooperative.

Appellants did not appeal the court's partial denial of their first motion for summary judgment.

**6.** See TEX.R. CIV. P. 166a(c).

**7.** See TEX.R. CIV. P. 166a(i).

**8.** See TEX. GOV'T CODE ANN. § 54.1001 (Vernon 2005) (allowing certain courts to appoint associate judges in Fort Bend County); id. § 54.1009(a) (providing for referral of certain civil matters to associate judge); id.

judge's order also included a statement that "[t]he Court further finds that Plaintiff Wade Brady is not a limited purpose public figure and is, therefore, not required to demonstrate actual malice to prevail on his claims at trial."

Appellants appealed the associate judge's decision to the district court, requesting a de novo hearing.[9] In that appeal, appellants complained that the associate judge had erred as a matter of law for the reasons set forth in the second motion for summary judgment, including (1) "failing to properly apply the substantial truth doctrine in determining [appellants'] traditional summary judgment motion with respect to the affirmative defense of truth, and with respect to [appellants'] no-evidence summary judgment motion with respect to material falsity, an essential element of [Wade's] claim for relief"; (2) "failing to properly apply the limited purpose public figure doctrine" by failing to determine that Wade was a limited purpose public figure; and (3) "failing to apply the constitutional actual malice standard" and failing to determine, as a matter of law, "that actual malice was negated by [appellants] and [Wade] failed to raise a genuine issue of material fact on the existence of actual malice." Appellants did not refer to their fourth traditional summary judgment ground that had asserted that a particular statement in the article regard-ing the DPS videotape was a matter of opinion and so not actionable.

The district court, after holding a de novo hearing, issued an order affirming the associate judge's denial of [appellant's] second motion for summary judgment.[10] The decretal portion of the district court's order read, in relevant part,[11]

> After considering [the] issues [as recited in appellants' motion] raised on appeal *de novo*, based on the record and oral argument, the Court AFFIRMS the Associate Judge's Order entered March 7, 2007 with respect to the issues appealed by [appellants] and hereby DENIES [appellants' second motion for summary judgment] on the issues raised on appeal as follows:
>
> (A) [Appellants] have not sustained their burden of establishing the affirmative defense of substantial truth and therefore their conventional motion on the affirmative defense of substantial truth is DENIED.
>
> (B) [Wade] has raised a question for the trier of fact on the issue of material falsity and, therefore, [appellants'] no evidence motion on this point is DENIED;
>
> (C) The Court holds that [Wade] is not a limited purpose public fig-

§ 54.1011 (establishing duties and powers of associate judge).

9. *See id.* § 54.1018 (allowing for appeal of associate judge's "report" to referring court, and further allowing trial de novo in referring court upon that appeal).

10. *See id.* § 54.1019(a) ("[I]n the case of an appeal under [Government Code] Section 54.1018, after the [referring] court has decided the appeal, the court may adopt, modify, correct, reject, or reverse the associate judge's report or may recommit it for further information, as the court determines to be proper and necessary in each case."); *see also id.* § 54.1020 ("The finding and recommendations become the decree or judgment of the court when adopted and approved by an order of the judge.").

11. The district court's order also addressed appellants' complaint regarding a ruling by the associate judge on a matter that was not raised in the notice of appeal to the district court. The district court ruled that right to de novo review of that matter was waived. No complaint is made on appeal of the district judge's ruling on that matter.

ure as a matter of law and, therefore, is not required to demonstrate actual malice to prevail on his claims; therefore, Defendants' conventional motion on the issue of negating actual malice and Defendants' no evidence motion on the issue of actual malice are DENIED as moot[.]

Appellants bring an interlocutory appeal from this order.[12]

## Standard of Review

■ We review a trial court's decision to grant or to deny a motion for summary judgment de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192, 199 (Tex.2007) (citing rule for review of grant of summary judgment and reviewing denied cross-motion for summary judgment under same standard). When reviewing the denial of summary judgment, we apply the same well-known standards applicable to the granting of summary judgment. *Harvest House Publishers v. Local Church*, 190 S.W.3d 204, 209 (Tex.App.-Houston [1st Dist.] 2006, pet. denied) (citing *Associated Press v. Cook*, 17 S.W.3d 447, 451 (Tex.App.-Houston [1st Dist.] 2000, no pet.)). Defamation cases are reviewed under the same summary judgment standards as other cases even though constitutional considerations are involved. *See Casso v. Brand*, 776 S.W.2d 551, 556–57 (Tex.1989); *Galveston Newspapers, Inc. v. Norris*, 981 S.W.2d 797, 799 (Tex.App.-Houston [1st Dist.] 1998, pet. denied).

A motion for summary judgment must stand or fall on the grounds expressly presented in the motion, *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993), and a trial court may not grant summary judgment on a ground not presented by the movant in writing. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex.1979). Likewise, on appeal, the issues reviewed by the appellate court "must have been actually presented to and considered by the trial court." *Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex.1992). An appellate court should consider all the grounds for summary judgment ruled on by the trial court that were preserved by the movant and are necessary for final disposition of the appeal; an appellate court may consider, in the interest of justice, grounds that the movant preserved for review and on which the trial court did not rule. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996).

Under the traditional summary judgment standard, the movant has the burden to show that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true, and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon*, 690 S.W.2d at 548–49. A defendant moving for a tra-

12. Appellants filed two appeals in this Court related to the denial of their motion for summary judgment. The first appeal was from the order of the associate judge and it was assigned appellate cause number 01–07–00307–CV. The second appeal was from the order of the district court affirming associate judge's order and it was assigned appellate cause number 01–07–00520–CV. We consolidated the two appeals into cause number 01–07–00520–CV. Because the associate judge's order did not become an order of the court until it was affirmed by the district court judge, see *id.* § 54.1020, it is the district court order that we review on appeal.

ditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). After a defendant has done so, the burden then shifts to the plaintiff to produce evidence creating a fact issue on the element or defense in order to defeat the summary judgment. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996).

A motion for no-evidence summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex.2003). In general, a party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the non-movant's claims on which the non-movant would have the burden of proof at trial. *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the non-movant to raise a fact issue on the challenged elements. TEX.R. CIV. P. 166a(i). If the non-movant produces more than a scintilla of probative evidence to raise a genuine issue of material fact, a no-evidence summary judgment is improper. *Id.; Forbes, Inc. v. Granada Biosci., Inc.*, 124 S.W.3d 167, 172 (Tex.2003). More than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Forbes*, 124 S.W.3d at 172. A no-evidence summary judgment is properly granted when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered by the non-movant to prove a vital fact, (3) the evidence offered by the non-movant to prove a vital fact is no more than a scintilla, or (4) the non-movant's evidence conclusively establishes the opposite of a vital fact. *See King Ranch*, 118 S.W.3d at 751. As with a traditional summary judgment, a reviewing court must view the evidence in the light most favorable to the non-movant. *Id.*

When a party seeks both a traditional and a no-evidence summary judgment, we first review the trial court's decision regarding summary judgment under the no-evidence standards of Rule 166a(i); if the non-movant failed to produce more than a scintilla of evidence raising a genuine issue of fact on the challenged elements of his claim, there is no need to analyze whether the movant met his burden on his motion for traditional summary judgment. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004).

## Fault, Falsity, and Substantial Truth in Libel Cases involving Media Defendants

■ Generally, to prevail on a cause of action for libel against a media defendant, a plaintiff must prove that the defendant (1) published a statement (2) that was defamatory concerning the plaintiff (3) while acting with actual malice, if the plaintiff was a public official or public figure, or while acting with negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).

■ The third requirement relates to a showing of fault on the part of the media defendant, which is a constitutional prerequisite for defamation liability. *Id.* As to this requirement, the public plaintiff must prove, by clear and convincing evi-

dence, that the media defendant published the statement with "actual malice," that is, "made with knowledge of [the statement's] falsity or with reckless disregard for the truth." *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974). The private individual need prove only negligence on the part of the media defendant—that is, he must show that the defendant knew or should have known that the defamatory statement was false—in order to recover actual damages. *See McLemore,* 978 S.W.2d at 571; *Foster v. Laredo Newspapers, Inc.,* 541 S.W.2d 809, 819 (Tex.1976). However, when the defamatory statement involves a matter of public concern, a private individual must meet the higher standard of proving actual malice in order to recover any presumed or punitive damages against a media defendant. *Gertz,* 418 U.S. at 349, 94 S.Ct. at 3011 (holding, when defamatory statement involved issue of public concern, that private individual was required to prove actual malice to recover presumed or punitive damages against media defendant); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.* 472 U.S. 749, 761, 105 S.Ct. 2939, 2946, 86 L.Ed.2d 593 (1985) (clarifying that *Gertz* does not apply when statement involves no issue of public concern).

■■■■ Both standards of fault—negligence and actual malice—inherently incorporate the notion of falsity. *See Foster,* 541 S.W.2d at 819 (explaining that plaintiff must show that defendant "knew or should have known *that the defamatory statement was false* ") (emphasis added); *Gertz,* 418 U.S. at 328, 94 S.Ct. at 3002 (defining actual malice as "with knowledge that [*the statement* ] *was false* or with reckless disregard of whether it was *false* or not.") (emphasis added). Under the common law, the falsity of the defamatory statement is presumed and the defendant bears

the burden of proving the statement true. *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 776–77, 106 S.Ct. 1558, 1563–64, 89 L.Ed.2d 783 (1986). However, when a defamation suit is brought against a *media defendant* and involves an issue of *public concern,* the constitutional requirements of the First Amendment supersede the common law presumption of falsity, and the plaintiff—whether a public plaintiff or a private individual—is required to prove the falsity of the challenged statement by a preponderance of the evidence before recovering any damages. *See id.* at 775–76, 106 S.Ct. at 1563 (noting that public figure plaintiffs are required to show falsity and then holding in regard to private individuals that "the common law's rule on falsity—that the defendant must bear the burden of proving truth—must similarly fall here to a constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages."); *Bentley v. Bunton,* 94 S.W.3d 561, 587 (Tex.2002) (noting that falsity need be proven only by a preponderance of the evidence).

■■■■ Whether or not a particular plaintiff is required to prove the falsity of the challenged statement, a defendant may assert truth as a defense to a libel action. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 73.005 (Vernon 2005); *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995). The truth of a statement is an absolute defense to a claim for defamation. *See Hurlbut v. Gulf Atl. Life Ins. Co.,* 749 S.W.2d 762, 766 (Tex.1987). A defendant cannot be liable for presenting a true account of events, regardless of what someone may infer from the account. *Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 115 (Tex.2000). A true account is not actionable—regardless of the conclusions that people may draw—so long as it does not create a substantially false

and defamatory impression by omitting material facts or suggestively juxtaposing them in a misleading way.. *Id.* at 115, 118.

 However, "literally or substantially true" facts which are "published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way" are actionable as defamation. *Id.* at 115. Therefore, a defendant who "gets the details right but fails to put them in the proper context and thereby gets the story's 'gist' wrong" may be held liable for defamation. *Id.* Whether a publication is false depends on "a reasonable person's perception of the entirety of a publication and not merely on individual statements." *Id.*

 Conversely, liability is precluded when a defendant "correctly conveys a story's 'gist' or 'sting' although erring in the details." *Id.* This is known as the "substantial truth" doctrine. *Id.* Courts use the "substantial truth" test to determine whether a statement is false. *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 516–17, 111 S.Ct. 2419, 2433, 115 L.Ed.2d 447 (1991); *McIlvain v. Jacobs,* 794 S.W.2d 14, 15–16 (Tex.1990). Under this doctrine, "minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting' " of the charge is justified. *Masson,* 501 U.S. at 517, 111 S.Ct. at 2433. A statement is substantially true, and thus not actionable, if, in the mind of the average person who reads the statement, the allegedly defamatory statement is not more damaging to the plaintiff's reputation than a truthful statement would have been. *McIlvain,* 794 S.W.2d at 16. This determination requires looking at the "gist" of the statement and, when the underlying facts as to the gist of the libelous charge are undisputed, disregarding any

variance regarding items of secondary importance and determining substantial truth as a matter of law. *Id.* If a defendant establishes, as a matter of law, the substantial truth of the statements of which a plaintiff complains, this will defeat the defamation claim and the defendant will be entitled to summary judgment. *McIlvain,* 794 S.W.2d at 15.

## Analysis

Appellants present seven issues on appeal. Their first is a broad issue questioning whether the trial court erred in denying appellants' motion for summary judgment and in not rendering a take-nothing summary judgment against Wade. Although we recognize that such a broad issue is authorized,[13] an appellant must nevertheless also present argument and supporting authorities in support of that issue. *See McCoy v. Rogers,* 240 S.W.3d 267, 272 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). Consequently, we review the arguments actually raised and briefed on appeal. *See* Tex.R.App. P. 38.1(f), 38.9; *McCoy,* 240 S.W.3d at 272. Appellants brief all their issues in a single argument section (with various subtitles), raising arguments relating to (1) falsity and substantial truth (issues two and three), (2) actual malice and Wade's status as a limited-purpose public figure (issues four, five, and six), and (3) statements as non-actionable opinion (issue seven).

## A. Falsity and substantial truth

 In their second issue, appellants assert that there is "no evidence, or insufficient evidence, that the Challenged Statements in the Article are false" and in their third issue, they aver that "the evidence establishes as a matter of law that the Challenged Statements in the Article are

---

13. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970).

not false and are, in fact, substantially true."[14] Considering such issues in light of the grounds presented in appellant's second summary judgment motion and their appeal to the district court, and the district court's ruling on the same, appellants raise in these issues the following legal challenges to the trial court's ruling:

- Appellants were entitled to a no-evidence summary judgment because Wade failed to raise a genuine issue of material fact on the essential element of falsity; and

- Appellants were entitled to a traditional summary judgment because they showed that no genuine issue of material fact exists and they conclusively negated the essential element of falsity or conclusively established their affirmative defense that the challenged statements in the Article were "substantially true."

We first note that both parties agree that Wade was required to prove the falsity of the complained-of article, so we assume, without deciding, that falsity is an essential element of Wade's cause of action.[15] Both parties also refer us to the "substantial truth" doctrine as the basis for making a determination regarding the truth or falsity of the Article, and contend that a determination of "falsity" depends on whether the "gist" of the publication is substantially true or, conversely, whether it creates a substantially false and defamatory impression. *See Turner*, 38 S.W.3d at 115. Both parties also discuss Wade's burden to raise a genuine issue of material fact and appellant's burden to conclusively establish their affirmative defense of substantial truth in light of the "gist" of the Article. We begin then by considering the "gist" of the Article.

### 1. *The "gist" of the Article*

Appellants argue that, even if particular underlying statements in the Article are inaccurate, the "gist" of the Article is nev-

---

**14.** Appellants also argue that Wade failed to establish that the challenged statements were defamatory, but this argument was not raised as a ground for summary judgment in appellants' second motion for summary judgment and so we cannot consider it. *See Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex. 1992) (holding that appellate court may only review issues "actually presented to and considered by the trial court"); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex.1979) (holding that trial court may not grant summary judgment on ground not presented by movant in writing); Likewise, because the question before the trial court, and this Court, involved the issue of "falsity" and not whether the challenged statements were "defamatory," we do not consider Wade's arguments that there exists a fact issue as to whether the Article is defamatory. *See also Bentley v. Bunton*, 94 S.W.3d 561, 587 (Tex. 2002) (noting that whether statement is defamatory is different question than whether statement is false, explaining, "That a statement is defamatory—that is, injurious to reputation—does not mean that it is false, and vice versa.").

**15.** In his brief on appeal, Wade did not assert that he had no burden to prove falsity, but simply argued that he had raised a fact issue as to the falsity of the article. At oral argument, Wade specifically conceded to this Court that he had the burden to prove falsity. Moreover, as we have earlier noted, the plaintiff bears the burden to prove falsity in a defamation suit against a media defendant when the suit involves an issue of public concern. *See Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775–76, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986); *see also Connick v. Myers*, 461 U.S. 138, 145, 148, 103 S.Ct. 1684, 1689, 1690–91, 75 L.Ed.2d 708 (1983) (describing speech seeking to "bring to light actual or potential wrongdoing or breach of public trust" on the part of a government official as speech on matter of public concern that is protected by the First Amendment); *Brawner v. City of Richardson*, 855 F.2d 187, 191–92 (5th Cir.1988) (holding that alleged misconduct by public officials, particularly by law enforcement officials, is matter of public concern).

ertheless substantially true. *See Masson,* 501 U.S. at 517, 111 S.Ct. at 2433. They contend that the "gist" of the Article was that "Chief Deputy Brady repeatedly contacted, in an unusual and atypical manner, the deputies that issued [Wade] a ticket and subsequently circulated an expunction order to round up clandestine audiotapes of those meetings."

Wade argues that, even if particular underlying statements in the Article are literally true, the "gist" of the Article is false because, through omission of material facts, it creates a substantially false impression. *See Turner,* 38 S.W.3d at 115. He asserts that the "gist" of the Article is that Wade "was using his Father to 'suppress' the justice system" and that "the meetings between [Chief Brady] and the Deputies were for the purpose of 'roadside suppression' of evidence of [Wade's] guilt for minor in possession." Wade contends that the Article paints a picture of Wade and his brother as "a sort of drunken 'Dukes of Hazard' tandem who are fortunate enough to have Fort Bend County's version of 'Boss Hogg' as their Father to put the 'fix' on the system."

 We construe the Article "as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it." *See id.* at 114. "Falsity for constitutional purposes depends upon the meaning a reasonable person would attribute to a publication, and not to a technical analysis of each statement." *New Times, Inc. v. Isaacks,* 146 S.W.3d 144, 154 (Tex.2004).

 We first observe that the heading of the Article is "Deputy Brady's tape

collecting called 'Roadside Suppression.'" The target of the Article is Chief Brady and the subject of the Article, albeit with many extraneous details and digressions, is the alleged demand by Chief Brady for deputies to turn over certain audiotapes and the propriety of such alleged action. To the extent that the Article addresses Wade's incidents with the law, the emphasis is on Wade's father's reaction to those incidents, and not on Wade. Construing the Article as a whole, in light of the surrounding circumstances and based upon how a person of ordinary intelligence would perceive it, we conclude that the gist of the Article is that Chief Brady, in an effort to help his son, Wade, abused his official position by intervening on his son's behalf in an effort to "suppress" evidence, specifically, by intimidating and coercing the deputies who issued Wade a ticket and illegally demanding and requiring them to turn over to him audiotapes related to the incident. Although many details regarding Wade's encounters with law enforcement appear in the Article, the "gist" of the Article is not Wade's alleged misdeeds; Wade is a secondary character, portrayed as the beneficiary of his father's purportedly improper actions, whose dealings with the law provided the catalyst for his father's alleged misconduct.[16]

2. *Did Wade meet his burden in the no-evidence summary judgment proceeding to raise a genuine issue of material fact on the essential element of falsity?*

 In order to avoid a no-evidence summary judgment on the issue of falsity, Wade was required to present more than a scintilla of evidence to raise a genuine

---

**16.** We do not address whether, and, if so, to what extent, the Article was "of and concerning" Wade. Appellants first raised this question on appeal in their reply brief. We need not determine whether the question was timely raised on appeal, however, because appel-

lants did not raise such a complaint to the trial court as a basis for summary judgment in the second summary judgment motion whose denial is at issue in this case. *See Travis,* 830 S.W.2d at 100; *Clear Creek Basin Auth.,* 589 S.W.2d at 677.

issue of material fact as to whether the "gist" of the Article was false, that is, whether the "gist" created a "substantially false and defamatory impression." *Forbes*, 124 S.W.3d at 172; *Turner*, 38 S.W.3d at 115. Wade, therefore, was required to present evidence which "would allow reasonable and fair-minded people to differ in their conclusions" as to whether the "gist" of the Article created a substantially false and defamatory impression. *See Forbes*, 124 S.W.3d at 172; *Turner*, 38 S.W.3d at 115.

Contrary to appellants' assertions, the facts underlying the "gist" of the Article are not uncontested. Wade's summary judgment evidence included affidavits from all three deputies who were involved in issuing the ticket to Wade, in which the deputies specifically deny the claims of intimidation and coercion on the part of Chief Brady that underlie the "gist" of the Article. There was also deposition evidence from the deputies before the trial court (attached to appellant's motion for summary judgment) and an affidavit from the Fort Bend County Attorney that contradict various assertions in the Article—and the impression that they convey—regarding the Chief Brady's alleged demands for the audiotapes, the propriety of any demands and the legal scope of the expunction order, and the means and reasons for the deputies' compliance with the expunction order. The deputies' affidavits and deposition excerpts, along with the transcript of an audiotape referenced in the article, also provide evidence that Chief Brady specifically told the deputies—at one of the meetings that the Article dubs a "Roadside Suppression Hearing"—that writing the MIP ticket was "not a problem," that they should proceed forward with Wade's case and "do the whole thing," and that a jury trial on the ticket would be a good learning experience for Wade, whom Chief Deputy Brady had recently caught drinking.[17] The Article omits any reference to this portion of the audiotape that directly contravenes the Article's "gist" that Chief Deputy Brady was trying to "suppress" evidence for Wade's benefit and intimidate or coerce the deputies regarding the ticket given to Wade.

This evidence would allow reasonable and fair-minded people to differ in their conclusions as to whether Chief Brady abused his official position by intimidating and coercing the deputies in an improper effort to "suppress" evidence in order to help Wade. Accordingly, we hold that Wade presented more than a scintilla of evidence to raise a genuine issue of material fact as to whether the "gist" of the Article was false, and therefore appellants were not entitled to a no-evidence summary judgment on the essential element of falsity. *See Forbes*, 124 S.W.3d at 172; *Turner*, 38 S.W.3d at 115.

3. *Did appellants meet their traditional summary judgment burden to show that no genuine issue of material fact exists and to conclusively negate the essential element of falsity or conclusively establish their affirmative defense that the challenged statements in the Article were "substantially true"?*

As we have held that Wade raised a genuine issue of material fact on the essential element of falsity, it necessarily follows that appellants did not establish that "there was no genuine issue of material fact" and conclusively negate the essential element of falsity so as to be entitled to a traditional summary judgment on that ground. *See* TEX.R. CIV. P. 166a(c); *Sci. Spectrum*, 941 S.W.2d at 911.

---

17. Chief Deputy Brady also discussed his frustrations with his sons, his concerns about their possible drinking, and his efforts to supervise them.

■ Appellants nevertheless argue that they were entitled to summary judgment because they conclusively established the Article's substantial truth by showing that its gist is not more damaging to Wade's reputation in the mind of the average reader than the truth. *See McIlvain,* 794 S.W.2d at 16. However, taking the evidence on summary judgment that is favorable to Wade as true, indulging every inference in his favor, and resolving any doubts in his favor, *Nixon,* 690 S.W.2d at 548–49, we conclude that the evidence establishes that Chief Brady did not intimidate or coerce the deputies in an effort to improperly "suppress" evidence in order to help Wade. This evidence, which we must presume to be true, is directly contrary to the gist of the Article, which gives an average reader the impression that Wade was the beneficiary of, and reason for, Chief Brady's abuse of his public position through intimidation, coercion, and improper "suppression" of evidence. We cannot conclude that this gist is not more harmful to Wade's reputation in the mind of the average reader than the presumed truth that Wade was not the beneficiary of, nor the catalyst for, any official misconduct on the part of Chief Brady because no such intimidation, coercion, or improper "suppression" of evidence for Wade's benefit ever took place. Appellants therefore have failed to conclusively establish that the gist of the Article was not more damaging to Wade's reputation in the mind of the average reader than the truth. Furthermore, even if appellants had established a right to summary judgment on the basis of substantial truth, because the underlying facts regarding the alleged intimidation, coercion, and "suppression" of evidence are disputed, a material issue of fact exists on the issue of substantive truth precluding summary judgment. *See* TEX.R. CIV. P. 166a(c); *see also Cram Roofing Co., Inc. v. Parker,* 131 S.W.3d 84, 90 (Tex.App.-San Antonio 2003, no pet.) (holding, in regard to substantial truth defense, that "[o]bviously, if the underlying facts [regarding the 'gist' of the statement] are disputed, then a fact issue arises.").

We conclude that appellants did not meet their burden to (1) establish that no genuine issue of material fact exists and (2) to either conclusively negate falsity or conclusively establish the substantial truth of the Article. *See* TEX.R. CIV. P. 166a(c); *Sci. Spectrum,* 941 S.W.2d at 911. We therefore hold that appellants were not entitled to a traditional summary judgment on the element of falsity or on their defense of substantial truth.

We overrule appellants' second and third issues.

### B. Actual malice and Wade's status as a limited purpose public figure

■ In their fourth and fifth issues, appellants assert that they established as a matter of law that Wade is a limited purpose figure required to prove that the Article was published with actual malice, and that there was "no evidence, or insufficient evidence," of actual malice before the court on summary judgment. In their related sixth issue, appellants argue that they established, as a matter of law, that the Article was published without actual malice. Considering such issues in light of the grounds presented in appellant's second summary judgment motion and their appeal to the district court, and the district court's ruling on the same, appellants raise in these issues the following legal challenges to the trial court's ruling:

■ Appellants established as a matter of law that Wade was a limited purpose public figure and thus the trial court erred in declaring otherwise and ruling that actual malice was not an essential element of Wade's cause of action; and

- because Wade was a limited purpose public figure and was therefore required to prove actual malice as an essential element of his cause of action, appellants were entitled to a no-evidence summary judgment because Wade failed to raise a genuine issue of material fact on the essential element of actual malice; and

- because Wade was a limited purpose public figure and was therefore required to prove actual malice as an essential element of his cause of action, appellants were entitled to a traditional summary judgment because they showed that no genuine issue of material fact exists and they conclusively negated the essential element of actual malice.

Public figures suing a media defendant for defamation must prove that the defendant published the statement with "actual malice." [18] *See Gertz,* 418 U.S. at 342, 94 S.Ct. at 3008. In determining whether a particular plaintiff must prove actual malice, the court must look at the "the character of the plaintiff" as a private or public figure, rather than the nature of the subject-matter at issue. *See Time, Inc. v. Firestone,* 424 U.S. 448, 453, 455–56, 96 S.Ct. 958, 965, 966, 47 L.Ed.2d 154 (1976). It is not enough that a plaintiff is involved or associated with a matter of public or general interest, no matter how significant or sensational. *Id.* at 454, 96 S.Ct. at 965; *Wolston v. Reader's Digest Ass'n, Inc.,* 443 U.S. 157, 167, 99 S.Ct. 2701, 2707, 61 L.Ed.2d 450 (1979). "A private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention" or is newsworthy. *Wolston,* 443 U.S. at 167, 99 S.Ct. at 2707.

There are two classes of "public figures": (1) general-purpose public figures, who are individuals who "achieve such pervasive fame or notoriety that [they] become[ ] public figure[s] for all purposes and in all contexts;" and (2) limited-purpose public figures, who are persons who "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved .... inviting attention and comment," who "inject[ ] [themselves] or [are] drawn into a particular public controversy .... assum[ing] special prominence in the resolution of public questions," "thrusting [themselves] into the vortex of [a] public issue ... [or] engag[ing] the public's attention in an attempt to influence its outcome." *Gertz,* 418 U.S. at 345, 351, 352, 94 S.Ct. at 3009, 3012, 3013. Whether a person is a public figure is a question of law for the court to decide. *Rosenblatt v. Baer,* 383 U.S. 75, 88, 86 S.Ct. 669, 677, 15 L.Ed.2d 597 (1966)).

To determine whether a person is a limited-purpose public figure, Texas courts apply a three-part test:

(1) the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution;

(2) the plaintiff must have more than a trivial or tangential role in the controversy; and

---

18. At trial, a public figure must prove actual malice by "clear and convincing" evidence, but this level of proof is not required at the summary judgment stage. *Huckabee v. Time Warner Entm't Co., L.P.,* 19 S.W.3d 413, 421 (Tex.2000). Rather, "if a fact issue exists at the summary judgment stage, the evaluation about whether a reasonable jury would find the plaintiff's evidence to be clear and convincing is best made after the facts are fully developed at trial." *Id.* at 423.

(3) the alleged defamation must be germane to the plaintiff's participation in the controversy.

*McLemore,* 978 S.W.2d at 571–72 (adopting test from *Trotter v. Jack Anderson Enters., Inc.,* 818 F.2d 431, 433 (5th Cir. 1987)).

To determine whether a public controversy existed and its scope, a court must examine "whether persons actually were discussing some specific question." *McLemore,* 978 S.W.2d at 572. "A general concern or interest will not suffice," *id.;* a public controversy is more than simply a "controvers[y] of interest to the public." *Firestone,* 424 U.S. at 454, 96 S.Ct. at 965. A court may also look at whether "the press was covering the debate, reporting what people were saying and uncovering facts and theories to help the public formulate some judgment." *McLemore,* 978 S.W.2d at 572.

To determine whether an individual had more than a trivial or tangential role in the controversy, a court should consider: (1) whether the plaintiff actively sought publicity surrounding the controversy; (2) whether the plaintiff had access to the media; and (3) whether the plaintiff voluntarily engaged in activities that necessarily involved the risk of increased exposure and injury to reputation. *McLemore,* 978 S.W.2d at 572–73. As to this requirement, the Texas Supreme Court has noted, "By publishing your views you invite public criticism and rebuttal; you enter voluntarily into one of the submarkets of ideas and opinions and consent therefore to the rough competition in the marketplace." *Id.* at 573 (quoting *Dilworth v. Dudley,* 75 F.3d 307, 309 (7th Cir.1996)).

A person does not become a public figure merely because he is "discussed" repeatedly by a media defendant or because his actions become a matter of controversy as a result of the media defendant's actions. *See Hutchinson v. Proxmire,* 443 U.S. 111, 135, 99 S.Ct. 2675, 2688, 61 L.Ed.2d 411 (1979) (noting that the subject of plaintiff's writings became matter of controversy only as consequence of defendant's action and proclaiming that, "[c]learly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure."). Even engaging in criminal conduct does not make make a person a limited-purpose public figure. *Wolston,* 443 U.S. at 168, 99 S.Ct. at 2708. Rather, a defamation defendant must show that the plaintiff "relinquished ... his interest in the protection of his own name" by "engag[ing] the attention of the public in an attempt to influence the resolution" of "an[ ] issue of public concern." *Id.* at 168, 99 S.Ct. at 2707–08.

Reviewing the evidence at summary judgment in the required light—taking the evidence that is favorable to Wade as true, indulging every inference in his favor, and resolving any doubts in his favor—we conclude that appellants did not establish as a matter of law that Wade is a limited-purpose public figure.

Firstly, the evidence does not support a finding that there was any "public controversy," involving "people discussing a real question," "the resolution of which was likely to impact persons other than those involved in the controversy." Appellants cite to their own prior opinion columns in the *Star* in which they "grouched and groaned" about Chief Brady, but the mere fact that appellants (and no other press) chose to write and publish opinion columns about Chief Brady is merely evidence of appellants' "concern," not a "public" discussion of a "real question." Likewise, the fact that "Chief Deputy Brady ... knew that his actions ... would be controversial

and likely the subject of public interest," and that he and the deputies made audiotapes, is not evidence that a controversy already existed in which the "public" was "actually discussing a specific question." *See McLemore*, 978 S.W.2d at 572. The mere fact that some issue *may* become the subject of public discussion is not evidence that a specific question is already being discussed by the public. Finally, appellants' citation to testimony from the deputies regarding "gossip around the office"—about the fact that Wade had been ticketed and about the term "roadside suppression hearing" (the latter which all three deputies recalled hearing only *after* the Article was published)—and the DPS trooper's personal feelings about Chief Brady's actions and his sense of "pressure" after the DPS stop, do not establish as a matter of law that the "public" was "actually discussing" a "real" and "specific question." McKinnon's testimony that "everybody kind of questioned why we were having these meetings," while evidence of a public discussion of a specific question, at least among sheriff's department personnel, does not involve a question whose resolution was likely to impact persons other than those specifically involved (the three deputies).

Moreover, even assuming the existence of a "public controversy" regarding the alleged "roadside suppression hearings" and Chief Brady's actions relative to the expunction order, appellants have not proven, as a matter of law, that Wade was a limited-public figure as to this particular controversy. Appellants argue that the fact that Wade "is the son of the Chief Deputy" causes him to be "the subject of public scrutiny" and that his various interactions with the law such as being hand-cuffed a week after the MIP stop by the DPS trooper, his calling of his father when someone stole his cell phone almost two years prior to the MIP stop (when Wade was apparently 16 years old), and his coming home "crying" to his father after the MIP stop, therefore constituted voluntary engagement in activities that "necessarily involved the risk of increased exposure and injury to reputation." Appellants also mention Wade's defense of himself at the trial on the MIP ticket and his subsequent petition for an expunction. Appellants assert that, as a result of these actions, Wade became a limited-purpose public figure.

However, the mere fact that Wade's father is a public official and, thus, that Wade's behavior might be more "newsworthy" than a teenager whose father was not a public official, does not mean that any alleged misbehavior in which he might have engaged made Wade a limited-purpose public figure with respect to the particular controversy at issue in this litigation. "A libel defendant must show more than mere newsworthiness to justify application of the demanding burden of [actual malice]." *Wolston*, 443 U.S. at 167–68, 99 S.Ct. at 2707. It is not enough that the "son of the Chief Deputy" generally engaged in acts that "would generate attention and discussion"; rather, the voluntary acts would have had to be "with respect to this controversy",[19] in an attempt to influence the resolution of the public questions at issue in the controversy. *See id.; see also Gertz*, 418 U.S. at 345, 352, 94 S.Ct. at 3009, 3013; *McLemore*, 978 S.W.2d at 573.

The evidence at summary judgment does not support a finding that Wade "thrust [himself] to the forefront" of that "particular public controvers[y] in order to

---

**19.** *See Am. Broad. Co., Inc. v. Gill*, 6 S.W.3d 19, 35 (Tex.App.-San Antonio 1999, pet. denied), *overruled in part on other grounds, Tur-* *ner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex.2000).

influence the resolution of the issues involved .... [i]nvit[ing] attention and comment," or "inject[ed] himself or [was] drawn into [that] particular public controversy .... assum[ing] special prominence in the resolution of public questions," or "thrust himself into the vortex of [a] public issue ... [or] engage[d] the public's attention in an attempt to influence its outcome." *Gertz,* 418 U.S. at 345, 351, 352, 94 S.Ct. at 3009, 3013. Wade did not "thrust himself" into any controversy that might have arisen from his father's actions in response to the MIP ticket and did not seek to influence the resolution of any public questions arising from any such controversy; the only actions Wade took after the MIP ticket that related in any way to such "controversy" were actions to defend himself in court at the trial on the ticket and to petition for, and receive, an expunction. However, Wade's use of judicial processes did not "thrust" him to the "forefront" or "inject" him into the "vortex" of "a public controversy" or "public issue" in order to "influence the resolution" of "public questions," nor did it constitute a "voluntary engagement" in activities that involved the risk of increased exposure and injury to reputation. *See Firestone,* 424 U.S. at 454–55, 96 S.Ct. 965–66 (holding that use of judicial process to litigate divorce did not make plaintiff a public figure and noting that such action was no more voluntary than that of defendant called upon to defend his interest in court).

Appellants invite us to create a new category of limited-purpose public figures in Texas—an "involuntary" limited-purpose public figure, who becomes a public figure "when his or her conduct is related in an integral and meaningful way to the conduct of a public official"—and cite to a decision from an intermediate Tennessee appeals court for support of this proposition. *See Lewis v. NewsChannel 5 Network, L.P.,* 238 S.W.3d 270, 298–300 (Tenn. Ct.App.2007). We observe that appellants did not make this argument to the trial court, or even to this Court until their reply brief. We further note that the cited authority is not binding on this Court, follows prior Tennessee Supreme Court authority setting out a different standard than Texas's for determining when a person is a limited-purpose public figure, and relies heavily on reasoning from a prior United States Supreme Court opinion that the Court subsequently rejected in *Gertz.* Finally, we recognize that applying *Lewis*'s reasoning would require us to depart from the well-established standard set out by the Texas Supreme Court in *McLemore. See McLemore,* 978 S.W.2d at 571–73; *see also Trover v. Paxton Media Group, L.L.C.,* No. 4:05CV–014–H, 2007 WL 4302088, at *3–6 & fn. 5 (W.D.Ky. Dec. 5, 2007) (discussing *Lewis* and cases with similar reasoning in light of *Gertz* and its progeny, and concluding that different standard, similar to that used in *McLemore,* used "better approach"). We decline appellants' invitation.

Having held that Wade was not a limited-purpose public figure, we reject appellants' contention that Wade was required to prove actual malice as an essential element of his cause of action.[20] We there-

---

**20.** Appellants did not assert to the trial court that Wade was required to prove actual malice in order to recover any presumed or punitive damages because the defamatory statement involved a matter of public concern, *see Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349, 94 S.Ct. 2997, 3011, 41 L.Ed.2d 789 (1974) and *Dun & Bradstreet, Inc. v. Greenmoss*

*Builders, Inc.,* 472 U.S. 749, 761, 105 S.Ct. 2939, 2946, 86 L.Ed.2d 593 (1985), nor did they ask the trial court to grant a partial summary judgment barring the recovery of any presumed or punitive damages on the basis that there was no evidence of actual malice or that appellants affirmatively disproved actual malice. Because appellants did

fore need not address whether Wade presented evidence of actual malice in order to defeat a summary judgment. We hold that appellants were not entitled to either a no-evidence or a traditional summary judgment on the ground that Wade was required to present evidence of actual malice because he was a limited purpose public figure and failed to do so, or on the basis that, because he was a limited purpose public figure, Wade's cause of action failed because appellants negated the essential element of actual malice as a matter of law.

We overrule issues four, five, and six.

## C. Non-actionable opinion

In their seventh issue, appellants assert that a particular statement in the Article—namely, "In the DPS videotape viewed by the Star and then later obtained through the Freedom of Information Act, Wade Brady was so unruly and intoxicated that the Trooper had to handcuff him and place him in the backseat of the police car for safety"—was an assertion of opinion, not of fact, and therefore, not actionable as defamation. *See Bentley*, 94 S.W.3d at 579–81 (discussing test for determining actionable statements of fact versus constitutionally protected expressions of opinion). However, appellants did not present this ground to the district court for its review of their second summary judgment motion, and the district

court did not rule on this ground. While appellants did list this argument as a ground for summary judgment in their second motion for summary judgment, and the associate judge ruled on it, appellants did not raise the argument in district court when they appealed the associate judge's order and requested de novo review. Rather, appellants presented in their notice of appeal to the district court only their summary judgment grounds of falsity, substantial truth, and actual malice. The district court, in its order ruling on appellants' second motion for summary judgment, noted that it considered "all of the issues raised in [appellants'] Notice of Appeal [from the associate judge's ruling]" and listed them specifically. The district court then ruled on those specific grounds, denying appellant's second motion for summary judgment "on the issues raised on appeal," namely, substantial truth, material falsity, and actual malice. The district court, whose ruling we are reviewing on appeal,[21] never considered "non-actionable opinion" as a basis for summary judgment in its ruling at issue in this appeal. We therefore may not review appellant's complaint that the district court failed to grant summary judgment on a ground not presented to it or considered by it. *See Travis*, 830 S.W.2d at 100 (holding that appellate court may only review issues "actually presented to and considered by the trial court").[22]

We overrule appellants' seventh issue.

---

not present such a ground to the trial court or seek such relief, we do not consider whether Wade was required to prove actual malice for the purpose of recovering presumed or punitive damages. *See Travis*, 830 S.W.2d at 100; *Clear Creek Basin Auth.*, 589 S.W.2d at 677.

21. See footnote 12.

22. We note that a defamatory statement must be sufficiently factual to be susceptible of being proved objectively true or false, as contrasted from a purely subjective assertion.

*See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21–22, 110 S.Ct. 2695, 2707, 111 L.Ed.2d 1 (1990). When a defendant purports to base a statement on verifiable facts, that statement is not a purely subjective, constitutionally protected opinion, but a statement of fact that can be proven true or false. *See Bentley*, 94 S.W.3d at 581–82, 584–85. On that criterion, the complained-of assertion, which the Article asserted was based on the DPS videotape, is a statement of fact, subject to the test of truth or falsity—not a statement of opinion. More-

### D. Appellants' *Malooly* issue

Having overruled all of appellants's specific complaints regarding the denial of summary judgment, we overrule appellants' first issue broadly complaining of the denial of summary judgment.

### Conclusion

We affirm the trial court's denial of appellants' no-evidence and traditional motions for summary judgment and remand this case to the trial court for further proceedings.

over, the determination whether a publication is an actionable statement of fact or a protected expression of opinion depends upon a reasonable person's perception of the entirety of the publication and not merely on individual statements. *Id.* at 579. The Article was presented to the public as a news story, not an editorial or other expression of opinion.