In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-20-00298-CV**

**POLK COUNTY PUBLISHING COMPANY AND VALERIE REDDELL,**
**Appellants**

**V.**

**TOMMY LAMAR COLEMAN, Appellee**

_____

**On Appeal from the 258th District Court**
**Polk County, Texas**
**Trial Cause No. CIV33910**

_____

**MEMORANDUM OPINION**

In this accelerated appeal, Polk County Publishing Company (PCP) and Valerie Reddell appeal the trial court's denial of their Motion to Dismiss under the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001. On appeal, PCP and Reddell argue that the trial court erred because the TCPA applies to the legal action filed by Tommy Coleman, and he failed to establish a prima facie case proving each element of his claim for defamation. We affirm.

1

# I. Background

Coleman is employed as an assistant district attorney with the Polk County District Attorney's Office. PCP publishes a twice weekly newspaper, The Polk County Enterprise (Enterprise), in Polk County, and Reddell is an editor and employee for the newspaper. On June 7, 2020, Coleman made a post on his personal Facebook page "in support of PolkCountyToday.com[,]" a local competitor of the Enterprise.[1] On June 18, 2020, the Enterprise printed an article written by Reddell titled "Battle Lines drawn over prosecutor's conduct." A subheading stated the article was "[p]art of an ongoing series about the need for criminal justice reform." The article stated that prior to working for the Polk County District Attorney's Office, Coleman was employed by the Williamson County District Attorney's Office and "assisted with the prosecution of Michael Morton during his tenure[.]"[2] The article went on to describe the prosecution of Michael Morton and stated that during Morton's post-conviction legal attempts to prove his innocence, Coleman was "singled out in media reports for mocking requests to test that bandana for DNA." The article went on to state that Coleman was one of five prosecutors "informed that their services would no longer be needed[]" because according to the newly elected District Attorney, they were "'indoctrinated in the John Bradley

---

[1] Coleman's Facebook page was titled "Tommy Coleman for Polk County."
[2] *See* INNOCENCE PROJECT, *Michael Morton Time Served: 24 Years*, https://innocenceproject.org/cases/michael-morton/ (last visited Dec. 13, 2021).

school of thought,' which reportedly included a policy that defense attorneys weren't allowed to see the evidence against their clients until shortly before trial."

After the article was published, Coleman hired an attorney, sent a letter to the PCP stating the article contained "false and defamatory statements[,]" and demanded that the PCPrun a correction on the front page of the newspaper. Coleman took particular offense to the article's use of the word "prosecution" stating that when Morton was initially prosecuted in 1987, he was not a licensed attorney and did not work for the Williamson County District Attorney's Office.[3] The Enterprise subsequently ran a correction stating that the article had "mischaracterized" Coleman's involvement with the Michael Morton case, and that he was not involved with the initial trial and prosecution in 1987, and "[t]he proceedings that took place between 2005 and 2011, should not have been referred to as 'prosecution.'"

In August 2020, Coleman filed legal action against PCP and Reddell, alleging that the June 2020 article was libelous and sought damages. In response, PCP and Reddell answered and asserted an affirmative defense pursuant to the TCPA and moved to dismiss the claims under that statute.[4] In their motion to dismiss, both PCP and Reddell argued that the TCPA applies to Coleman's claims and that under the

---

[3] Coleman provided a copy of his Texas Bar Page with the State Bar of Texas that showed he was first licensed as an attorney in 2002.

[4] The answer filed by both PCP and Reddell included a request for attorney's fees against Coleman.

TCPA, Coleman cannot meet his burden to demonstrate each element of his defamation claim. In response, Coleman did not dispute that the TCPA applies to his claim but argued that he offered "ample evidence to support each element of his libel claim."

On November 19, 2020, the trial court held a hearing regarding PCP and Reddell's motions to dismiss under the TCPA. After hearing arguments, the trial court denied both motions to dismiss. Both PCP and Reddell timely filed a notice of appeal.

## II. Standard of Review

The TCPA "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The TCPA is meant "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.002. Courts construe the TCPA liberally to ensure its stated purpose and intent are fully effectuated. *Id*. § 27.011(b); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017).

4

A TCPA motion to dismiss involves a multi-step process. *See Youngkin v. Hines*, 546 S.W.3d 675, 679–80 (Tex. 2018); *Coleman*, 512 S.W.3d at 898–99; *Lipsky*, 460 S.W.3d at 586–87; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)–(d). "[A] court shall dismiss a legal action against the moving party if the moving party demonstrates that the legal action is based on or is in response to: (1) the party's exercise of: (A) the right of free speech; (B) the right to petition; or (C) the right of association; or (2) the act of a party described by Section 27.010(b)." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b). If the movant establishes that the plaintiff's lawsuit implicates one of these rights, the second step shifts the burden to the plaintiff to "'establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question.'" *Lipsky*, 460 S.W.3d at 587 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)). Finally, if the non-movant establishes their prima facie case, the burden shifts back to the movant to establish "an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d); *see also Youngkin*, 546 S.W.3d at 679-80 (discussing burden-shifting in the context of previous version of statute); *Coleman*, 512 S.W.3d at 898-99 (same).

On appeal, Coleman does not dispute that the TCPA applies to his claims. Therefore, we focus on whether Coleman satisfied his burden to demonstrate prima facie evidence of each element of his claim of defamation against PCP and Reddell.

5

## III. Analysis

### A. Affidavit

Reddell and PCP complain of the trial court's refusal to strike Coleman's evidence he submitted to meet his burden of proof in opposition to the motions to dismiss. To meet his burden of proof in his response, Coleman filed a sworn affidavit, together with exhibits which he attached to his original petition filed in the lawsuit and a copy of his State Bar of Texas page. Reddell and PCP objected to Coleman's affidavit and sought to have it struck, alleging it contained hearsay and self-serving statements insufficient to meet his burden under the statute. They argue on appeal that without the improperly admitted affidavit, Coleman failed to provide "clear and specific" evidence of each element of his claim for defamation.

An affidavit must do more than make conclusory, self-serving statements that lack factual detail. *See Haynes v. City of Beaumont*, 35 S.W.3d 166, 178 (Tex. App.—Texarkana 2000, no pet.). Conclusory affidavits are not sufficient to overcome or to establish a prima facie case in light of a TCPA motion to dismiss. *Camp v. Patterson*, No. 03-16-00733-CV, 2017 WL 3378904, at *7-8 (Tex. App.—Austin Aug. 3, 2017, no pet.) (mem. op.). "Bare, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA." *Lipsky*, 460 S.W.3d at 592. An affidavit must provide "details to support [the plaintiff's] factual

inference or show the factual basis for [his] claims." *Camp*, 2017 WL 3378904, at *8.

The affidavit filed by Coleman along with the attachments showed that the article published by PCP and Reddell about Coleman was false because in the article it asserted that Coleman was involved with the prosecution of Michael Morton. Coleman's affidavit stated that he was born in 1970 and was not licensed until 2002. Coleman's affidavit includes facts to support his allegation that he was defamed by the media defendants' use of the word "prosecution" in the article. Coleman states that he was seventeen years old when Michael Morton was initially prosecuted and that it would be another fifteen years before he obtained his law license. He states that he was employed at the Williamson County District Attorney's office from 2008 to 2012 and during that time, he never appeared of counsel for the State on the Michael Morton case, he never signed pleadings or any other legal documents regarding the case, never argued in court, never discussed strategy, or made any public comments regarding the case. This statement is not conclusory but, is factual and of such a type that can be easily controverted by his opponent, if false. *See Camp*, 2017 WL 3378904, at **7-8. Notably the Texas Supreme Court has rejected the idea that the TCPA "establish[es] a heightened evidentiary standard or prohibits circumstantial evidence." *Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 800

(Tex. App.—Austin 2017) (citing *In re Lipsky*, 460 S.W.3d at 591), *aff'd* 611 S.W.3d 1 (Tex. 2020). In *Lipsky*, the Texas Supreme Court stated that

> a plaintiff must provide enough detail to show the factual basis for its claim. In a defamation case that implicates the TCPA, pleadings and evidence that establish[ ] the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss.

460 S.W.3d at 591. Appellants' allegations that the affidavit is incomplete or self-serving are incorrect considering the other evidence presented by Coleman in his petition, including a copy of his bar page, a correction from the Enterprise correcting the use of the term "prosecution" in the previous article, and a letter to the editor from the Polk County District Attorney disputing the published article's accuracy. As such, in reviewing the affidavit in conjunction with his pleading, the statement is not conclusory and was properly considered by the trial court under the TCPA. *See id*. We overrule this issue.

## B. Defamation

### 1. Public Figure

Reddell argues that Coleman has to demonstrate actual malice in his prima facie case for defamation because he is at the very least a "limited purpose public figure.'" "A limited purpose public figure suing a media defendant for defamation must prove that the defendant published the statement with actual malice." *Post-Newsweek Stations, Houston, Inc. v. Dugi*, No. 13-10-00366-CV, 2011 WL

8

2463057, at *4 (Tex. App.—Corpus Christi-Edinburg June 16, 2011, pet. dism'd) (citing *Klentzman v. Brady*, 312 S.W.3d 886, 905–06 (Tex. App.—Houston [1st Dist.] 2009, no pet.)). A private citizen need only show the media defendant acted negligently. *Id.*

In *WFAA-TV, Inc. v. McLemore*, the Texas Supreme Court adopted a three-part test to determine if an individual is a limited public figure.

> (1) the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must have more than a trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy.

978 S.W.2d 568, 571 (Tex. 1998) (citing *Trotter v. Jack Anderson Enters., Inc.,* 818 F.2d 431, 433 (5th Cir.1987); *Waldbaum v. Fairchild Publ'ns, Inc.* 627 F.2d 1287, 1296–98 (D.C.Cir.1980)). In *McLemore*, the Supreme Court began its analysis by reviewing the controversy in question. *See id*. at 572. The court stated that to determine if this is a public controversy as outlined above, we must

> determine whether a controversy indeed existed and, if so, to define its contours, the judge must examine whether persons actually were discussing some specific question. A general concern or interest will not suffice. The court can see if the press was covering the debate, reporting what people were saying and uncovering facts and theories to help the public formulate some judgment.

*Id*. (quoting *Waldbaum*, 627 F.2d at 1297). An examination into Coleman's past work history and questions regarding his employment with the Polk County District

Attorney's Office was not something being publicly discussed, nor was the article assisting in uncovering facts to assist the public to form a judgment regarding a matter of public concern. *See id*. Reddell's argument that because the article reported Coleman's background and why he was hired at the Polk County District Attorney's office are "matters of public concern" is unpersuasive. "The mere fact that some issue *may* become the subject of public discussion is not evidence that a specific question is already being discussed by the public." *Klentzman*, 312 S.W.3d at 906. Framing their article as "[p]art of an ongoing series about the need for justice reform[]" does not mean that Coleman is "newsworthy" to thrust him in the role of a limited public figure. *Id*. ("A libel defendant must show more than mere newsworthiness to justify application of the demanding burden of [actual malice].") (quoting *Wolston v. Reader's Digest Ass'n, Inc*. 443 U.S. 157, 167–68 (1979)). The article makes no ties to any pending or recent prosecution or other public matter that involved Coleman or even the Polk County District Attorney's office. As such, Coleman's status as a limited public figure fails the first step of the *McLemore* test. *See McLemore*, 978 S.W.3d at 571. We need not analyze the other elements of the three-part test. *See Klentzman*, 312 S.W.3d at 906–08 (holding that the appellee was a not a limited public figure because the publication did not discuss a public controversy). Therefore, Reddell has not shown that Coleman is a limited public

10

figure with regard to his claims and he need not demonstrate actual malice in his prima facie evidence of defamation. *See id.*; *see also McLemore*, 978 S.W.2d at 571.

## 2. Prima Facie Case of Defamation

To maintain a cause of action for defamation, Coleman must demonstrate a prima facie case that the media defendants: "1) [] published a false statement; (2) the statement defamed [him]; (3) [the media defendants] acted with negligence regarding the truth of the statement; and (4) [he] suffered damages or the article is defamatory per se." *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 439 (Tex. 2017) (citing *Lipsky*, 460 S.W.3d at 593).

The parties do not dispute that the media defendants published the article in question. Therefore, we turn to the second element of defamation and determine whether Coleman met his burden of proof to present clear and specific evidence that the article was defamatory concerning Coleman. *See id.*

### a. Defamatory Statement

A defamatory statement

tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury.

Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (describing elements of libel). Because a "'chilling' effect would be antithetical to the First Amendment's protection of true

11

speech on matters of public concern, … a private-figure plaintiff must bear the burden of showing that the speech at issue is false before recovering damages for defamation from a media defendant." *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986).

A showing of the substantial truth of a publication will defeat a defamation claim. *See McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex.1990); *see also Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 791 (Tex. 2019). "The converse of that doctrine, []is that a defendant may be liable for a 'publication that gets the details right but fails to put them in the proper context and thereby gets the story's "gist" wrong.'" *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 627 (Tex. 2018) (quoting *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000)). If the publication correctly conveys a story's gist, although erring in the details, the publication is substantially true and is not actionable. *See Neely v. Wilson*, 418 S.W.3d 52, 63–64 (Tex. 2013), superseded by statute on other grounds by *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 791 (Tex. 2019). "If the underlying facts as to the gist of the defamatory charge are undisputed, then we can disregard any variance with respect to items of secondary importance and determine substantial truth as a matter of law." *McIlvain*, 794 S.W.2d at 16 (citation omitted).

This case concerns "the converse of the substantial truth doctrine." *Turner*, 38 S.W.3d at 115. "Because a publication's meaning depends on its effect on an

12

ordinary person's perception, courts have held that under Texas law a publication can convey a false and defamatory meaning by omitting or juxtaposing facts, even though all the story's individual statements considered in isolation were literally true or non-defamatory." *Id*. at 114 (citations omitted). This theory "permit[s] liability for the publication that gets the details right but fails to put them in the proper context and thereby gets the story's 'gist' wrong." *Id.* at 115 (citation omitted). "[T]he meaning of a publication, and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements." *Id*. (citations omitted).

In *KBMT Operating Co., LLC v. Toledo*, the Texas Supreme Court explained

> A statement need not be perfectly true; as long as it is substantially true, it is not false. The test for whether a report like [media defendant]'s is substantially true is whether the broadcast taken as a whole is more damaging to the plaintiff's reputation than a truthful [publication] would have been. This requires determining the import of the [publication] as a whole–its gist to the ordinary [reader]–and comparing it to a truthful report.

492 S.W.3d 710, 714 (Tex. 2016) (internal citations and quotations omitted). Coleman, therefore, bore the burden of presenting the requisite minimum quantity of evidence that the "gist" of the publication in question was false as a part of his prima facie case of defamation. And while a defense to a defamation suit against a media defendant is "'literally or substantially true' facts[,]'" as stated above, we review the issue in light of "'a reasonable person's perception of the entirety of a

13

publication and not merely on individual statements.'" *Klentzman*, 312 S.W.3d at 899.

Coleman argues that the use of the word "prosecution" is false. He states that the information as to whether he prosecuted Michael Morton is verifiably false because he was seventeen years old when Michael Morton was prosecuted, and he did not become a licensed attorney until 2002. Finally, Coleman asserts that the article is not even substantially true because the entire article is predicated on the false statement that he was a prosecutor in the Michael Morton case.

In response, both Reddell and PCP argue that the statement "assisted in the prosecution" is not false because the word "'prosecution' encompasses all stages of a case." The appellants argue that Morton was part of the district attorney's office during the time that Morton was fighting for post-conviction relief, and that Coleman was acting as a prosecutor in that office during that time. They contend the affidavit submitted by Coleman fails to demonstrate that Coleman was not a prosecutor during that time. According to Reddell, Coleman's statements in the affidavit that "he did not sign court papers, argue in court, or discuss strategy in the Michael Morton case…are self-serving, incomplete, and do not clearly and specifically refute that [he] indeed assisted on the case." Reddell argues that the affidavit does not dispute that the Williamson District Attorney's office employed Coleman during the post-conviction proceedings, that he attended hearings, or made statements about the

14

case. Polk County insisted that every time Coleman entered a courtroom to engage in a fight against Morton, every time they met to discuss the case, or spoke about the case or made public comments about the case, they "act[ed] as 'the prosecution' on behalf of the State of Texas."

We disagree with media defendants' arguments that the use of the term "prosecution" in this case implies post-conviction prosecution and therefore is substantially true. *Turner,* 38 S.W.3d at 115 (explaining that the "substantial truth doctrine" precludes liability in assessing whether a publication is defamatory). The article states "[p]rior to his arrival in Livingston, Tommy Lamar Coleman assisted with the prosecution of Michael Morton during his tenure at the Williamson County District Attorney's Office." The article goes on to describe the change in leadership of the Williamson District Attorney's Office during Coleman's tenure, the prosecution of Coleman's boss, Coleman's mocking Morton's attempts to get exoneration, and Coleman's actions after he left the Williamson County District Attorney's Office. The article makes no mention of when Coleman was hired by the Williamson County District Attorney's office, what age he was when he was hired or left, or even when he graduated law school or how long he has been a licensed attorney. While appellant Reddell argues that the "gist" of the story is substantially true, and contends that if you remove the offending sentence, it would provide "no material difference in the entire context of the article[,]" we disagree. We must

15

analyze the publication in the context of how the average viewer, not a "careful viewer," would have perceived the publication. *See id.* at 119 (concluding that a statement's defamatory meaning must be viewed from the standpoint of an "ordinary" listener, not a "careful" listener, and noting that "'courts must refrain from a 'hair splitting analysis' of what is said ... to find an innocent meaning[.]'" (quoting *Forsher v. Bugliosi* (1980) 26 Cal. 3d 792, 722 [163 Cal. Rptr. 628, 608 P.2d 716]). The gist of the article is about Coleman's career as a prosecutor and how it led to his employment with the Polk County District Attorney's Office. Everything except the last five paragraphs of the article discuss his career at the Williamson County District Attorney's Office and the subsequent fallout of the Michael Morton case. In this respect, we do not believe that an average reader is sufficiently familiar with the nuances of prosecutions and post-conviction relief to understand without context when or how Coleman was involved with the prosecution of Michael Morton. Especially considering that the article does not list Coleman's dates of employment with the Williamson County District Attorney's Office or clarify that he was only employed there during Michael Morton's attempts at post-conviction relief. *See id*. at 114 (noting that a "publication should be viewed 'not so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural probable effect on the mind of the average reader.'") (quoting *Kapellas v. Kofman* (1969) 1 Cal. 3d 20, 920 [81 Cal. Rptr. 360, 459 P.2d 912]).

16

Notably, after being contacted by Coleman about the article and the use of the word "prosecution," the newspaper published the following correction concerning the use of the word "prosecution" in the original article.

**CORRECTION**
**Coleman not involved in Morton trial and prosecution**

In the June 18, 2020 edition of the Polk County Enterprise, a front-page story about Tommy Lamar Coleman mischaracterized his role while employed with the Williamson District Attorney's Office.

Coleman graduated from law school in 2000 and was licensed in 2002. He was not involved in the initial trial and prosecution of Michael Morton in 1987, for the murder of Christine Morton.

In 2005, the Innocence Project launched efforts to exonerate Morton, which they finally achieved in 2011. The proceedings that took place between 2005 and 2011 should not have been referred to as "prosecution." We regret the error.

Finally, we reject PCP's contention that this information is privileged because the article reported on "a judicial or other official proceeding." PCP asserts that to qualify for this privilege the statement must be "substantially true" account of the proceeding…and they are not required to "prove the truth of the allegations that it repeats to its readers." While we acknowledge the judicial proceeding exception, as noted by the Texas Supreme Court in *Scripps NP Operating, LLC v. Carter*, that exception does not apply when the reporting goes well beyond "merely restating the allegations of a third party" and adopts the substance of the allegations as if they were true. 573 S.W.3d at 792. The article states that Coleman was part of the

17

prosecution team, that he mocked Morton's efforts and that he was part of a group of prosecutors fired after a District Attorney was elected in Williamson County, due to Coleman being "indoctrinated" in a school of thought by the previous District Attorney "which reportedly included a policy that defense attorneys weren't allowed to see the evidence against their clients until shortly before trial." This was more than simply reporting allegations, but implicating Coleman in prosecutorial misconduct while employed as a district attorney at the Williamson County District Attorney's Office. *See id*. at 793 (explaining that the privilege does not apply when the "gist" of the article was that the allegations were true, not merely repeating the accusations of others).

We conclude, therefore, that Coleman has presented prima facie evidence that when viewing the publication as a whole in light of the surrounding circumstances, a person of ordinary intelligence would reasonably but erroneously conclude that the "gist" of the article was that Coleman was part of the prosecution team that prosecuted Michael Morton in the 1980's and otherwise engaged in prosecutorial misconduct.

### b. Defamation Per Se and Damages

Some statements are so obviously injurious to a plaintiff's reputation that they require no proof of injury to make them actionable. *See Hancock v. Variyam*, 400 S.W.3d 59, 63–64 (Tex. 2013); *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt.*

*Holdings, Inc.*, 219 S.W.3d 563, 580–81 (Tex. App.—Austin 2007, pet. denied). Such statements are considered defamatory per se. *Hancock*, 400 S.W.3d at 63–64. A false statement will typically be classified as defamatory per se if it: (1) "injures a person in his office, profession, or occupation[;]" (2) "charges a person with the commission of a crime[;]" (3) "imputes sexual misconduct[;]" or (4) "accuses one of having a loathsome disease[.]" *Tex. Disposal Sys. Landfill*, 219 S.W.3d at 581. If the alleged statement is determined to be defamatory per se, general damages are presumed without requiring specific evidence of harm to the plaintiff's reputation, thereby entitling the plaintiff to recover, at a minimum, nominal damages. *Id.*

The article constitutes clear and specific evidence that the article contained language that was reasonably capable of injuring Coleman in his office, profession, or occupation; by implying that he is unethical and untrustworthy, and wrongfully prosecuted Michael Morton. *See id.*; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 73.001. The word prosecution creates an ambiguity and when an ambiguity exists about the meaning and effect of the words or when a predicate fact question remains about whether the statements were published or were false, a jury should determine the statement's meaning. *Tex. Disposal Sys. Landfill*, 219 S.W.3d at 581–83 (noting that defamation per se is generally a legal question, a jury question is presented where the defamatory character of a statement arises not from the defendants' blatant statements but from the impressions the defendants created and the inferences they

encouraged). As such, because the article is attacking Coleman's professional occupation, it is defamatory per se, and Coleman need not to show actual damages. *Klentzman*, 312 S.W.3d at 893 n.4 (citation omitted) ("A statement that is libel per se is so obviously hurtful that it does not require proof of injury in order to be actionable.").

### c. Negligence

Since we have already concluded that Coleman is a private citizen, we review whether Coleman presented prima facie evidence of negligence against the media defendant. *See D Magazine Partners*, 529 S.W.3d at 440. "Under that standard, the defendant is negligent if it 'knew or should have known a defamatory statement was false,' unless the content of the false statement would not 'warn a reasonabl[y] prudent editor or broadcaster of its defamatory potential.'" *Id*. (quoting *Neely*, 418 S.W.3d at 72). "Negligent conduct is determined by asking 'whether the defendant acted reasonably in checking the truth or falsity or defamatory character of the communication before publishing it.'" *Scripps Tex. Newspapers, L.P. v. Belalcazar*, 99 S.W.3d 829, 837 (Tex. App.—Corpus Christi 2003, pet. denied) (quoting Restatement (Second) of Torts § 580B cmt. g (1977)).

Here, Coleman presented an affidavit that stated he did not graduate law school until 2000 or become a licensed attorney until 2002, well after Michael Morton was prosecuted by the Williamson County District Attorney's office in the

20

1980's. His pleadings presented a copy of his Texas Bar Page, which demonstrated he was first licensed as an attorney in 2002. It is undisputed that Michael Morton was prosecuted in the 1980's. Therefore, Coleman presented sufficient minimum quantity of clear and specific evidence that the media defendants acted negligently by publishing the article, as the "gist" of which was that Coleman was a prosecutor on the Michael Morton case and was part of the possibly unethical, possibly criminal events during that litigation, and that he was dismissed from the Williamson County District Attorney's office because of "indoctrination," when the proof that he was not part of the initial prosecution was readily available with a simple internet search on the Texas Bar website. The article did not contain any information about his age or his tenure at the Williamson County District Attorney's Office. Further, the gist of the article and the use of the word "prosecution" would warn a reasonably prudent publisher and reporter of the article defamatory potential. *D Magazine Partners,* 529 S.W.3d at 440, (citing *Neely*, 418 S.W.3d at 72).

We conclude that Coleman presented the requisite minimum quantum of clear and specific evidence, unaided by inferences, that the article in question was defamatory concerning him. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Furthermore, because the article was defamatory per se, he need not show actual damages. Thus, we overrule this issue.

21

## IV. Conclusion

The media defendants have not shown that the trial court erred in denying their motion to dismiss Coleman's suit at this early stage of the litigation. Because Coleman presented a prima facie case to the trial court, we overrule Reddell's and PCP's issues regarding the denial of their motion to dismiss under the TCPA. We need not address their issues regarding attorney's fees or sanctions. *See* Tex. R. App. P. 47.1 (A Court of Appeals must hand down an opinion "that is as brief as practicable but addresses every issue raised and necessary to final disposition of the appeal."). We affirm the trial court's order denying Appellants' motion to dismiss the case.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on September 2, 2021
Opinion Delivered December 30, 2021

Before Golemon, C.J., Kreger and Horton, JJ.