# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-25-00216-CV

---

**Pecan Street Owners Association, a Texas Non-Profit Corporation;
and Shawn Cirkiel, an Individual, Appellants**

**v.**

**Mala Vida, LLC, a Texas Limited Liability Company,
and Gabriela Bucio, an Individual, Appellees**

---

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-24-008025, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, Pecan Street Owners Association (the Association) and Sean Cirkiel appeal from the trial court's denial by operation of law of their TCPA motion to dismiss appellees' lawsuit. *See* Tex. Civ. Prac. & Rem. Code §§ 27.003 ("Motion to Dismiss"), .008 ("Appeal"). For the following reasons, we reverse and remand in part and affirm in part.

### BACKGROUND[1]

Appellees are Gabriela Bucio and Mala Vida, LLC (the LLC). Bucio is a long-time Austin resident who operates several hospitality businesses in the Austin area, including

---

[1] The facts in this section are derived from the pleadings and evidence attached to the parties' motions and responses, which we view in the light most favorable to appellees as the nonmovants. *See Warner Bros. Ent., Inc. v. Jones*, 538 S.W.3d 781, 801 (Tex. App.—Austin 2017), *aff'd*, 611 S.W.3d 1 (Tex. 2020).

nightclubs, restaurants, and coffee shops. Bucio is a co-owner and a manager of the LLC, through which she owns and operates the downtown nightclubs Mala Vida and Mala Fama, located in the East Sixth Street area. Bucio and the LLC sued appellants for defamation related to statements appellants made linking appellees to criminal activity.

Appellants supported their TCPA motion with the affidavit of Cirkiel, the Association's President and non-voting Chairman of its Board of Directors. In the motion, they allege that the Association—a non-profit association of downtown Austin property owners—has long "contracted with the [C]ity to implement annual service plans to achieve" the City's goals of improving public safety, economic development, and historic preservation of the East Sixth Street Planned Improvement District (PID). Consistent with these goals, appellants allege that in early 2024 the Association engaged a licensed private investigator, Vicio Security and Investigations, to conduct an undercover investigation "to report on nightlife activities in the PID." Marcus Stokke is the owner of Vicio and has over twenty-five years of law-enforcement experience, including as a police officer and enforcement supervisor for the Texas Alcoholic Beverage Commission (TABC).[2] Stokke and his associates conducted their investigation over two weekends in March of 2024. Stokke then prepared two reports that he provided to the Association: (1) a six-page "Expert Investigative Report Summary" (Report) and (2) a twenty-two page "Expert Investigative Report" (Investigation Log) containing photographs and detailing observations made by Stokke and his associates.

---

[2] Stokke was a defendant below, filed a TCPA motion that was denied by operation of law, and filed a notice of appeal, but he has since settled with the plaintiffs and is no longer a party to this suit.

Appellees allege that the Association provided the Report[3] to "media outlet KVUE ABC" and "permitted KVUE ABC to publish the Report to the general public via [an article on] its website" that contained a link to access the Report. In their petition, appellees allege that "at least" the following statements (Statements) in the Report are false and defamatory:

Statement No. 1: By nonchalantly going through the motions and not effectively patting down customers and at the same time preventing a known police officer from entering with a weapon, as happened with me at Mala Fama during the first week's operation, it would appear that the criminal element has taken over the area.

Statement No. 2: In regard to the bars Mala Vida and Mala Fama, there is most definitely a criminal enterprise involved in the ultimate control of these establishments.

Statement No. 3: If I was supervising this area with TABC, I would start an investigation into both of these establishments [Mala Vida and Mala Fama] for money laundering of drug proceeds related to cartel activity, underage drinking, and subterfuge ownership. Ties to unlicensed bar Space Siete.

Other relevant portions of the Report include the following:

**Space Siete**

Engaging in organized criminal activity, money laundering, narcotics activity, selling A/B without license/permit, and underage drinking. At 2AM, most of the customers from Mala Vida and Mala Fama walk to Space Siete, the illegal after hours club they own and control. At Space Siete the public can purchase and consume alcoholic beverages all night long with absolutely no fear of any law enforcement intervention.

Appellees contend that, through their attorney, they demanded that appellants correct, clarify, and retract the false Statements but appellants have refused to do so.

---

[3] It is not clear from the record whether appellees allege that the Association and Cirkiel also published the Investigation Log to the cited media outlet, but the specific statements they challenge as defamatory appear only in the Report.

3

Furthermore, appellees contend that appellants "caused the Report to again be published online via the Austin Monitor." Appellees allege that appellants knew or should have known, in the exercise of ordinary care, that the Report contained false statements of fact about them and that they published the Statements with negligent disregard for their truth. They further allege that appellants "targeted" them "with actual malice and with the intent to damage" their business operations and to "further the personal financial interests" of Cirkiel and other Association members. Appellees contend that as a direct result of appellants' publication of the defamatory Report, "the general public suspects Ms. Bucio is a criminal and that her businesses, including Mala Vida, LLC, are criminal enterprises." Appellees allege that their businesses have "experienced an increase in police activity," detracting from their normal business activities and creating "undue apprehension amongst the consuming public as to the safety" of their businesses. They have asserted causes of action for common-law defamation and statutory libel. *See* Tex. Civ. Prac. & Rem. Code § 73.001 (defining libel as "defamation expressed in written or other graphic form" that causes one or more specified harms).

## DISCUSSION

In two issues, appellants contend that the trial court erred in (1) denying their motion to dismiss because (a) they established that the TCPA applies to appellees' claims and (b) appellees failed to establish a prima facie case for their claims and (2) failing to rule on or, alternatively, overruling by implication their objections to the affidavits of Bucio and Brandon T. Cook, appellees' attorney. We review the trial court's ruling on the TCPA motion de novo. *See RigUp, Inc. v. Sierra Hamilton, LLC*, 613 S.W.3d 177, 182 (Tex. App.—Austin 2020, no pet.).

4

### Does the TCPA apply?

Determining whether the TCPA applies to a legal action is a threshold issue in reviewing a trial court's ruling on a TCPA motion. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b) (requiring movant to show that legal action is "based on or is in response to" movant's exercise of protected rights); *Cavin v. Abbott*, No. 03-23-00541-CV, 2025 WL 2248705, at *6 (Tex. App.—Austin Aug. 7, 2025, no pet.) (mem. op.). Appellants contend that the TCPA applies because their publication of the Report constituted the exercise of their rights of free speech and of association and that appellees' lawsuit was based on or in response to such publication. *See* Tex. Civ. Prac. & Rem. Code §§ 27.001 (defining "exercise of the right of association" and "exercise of the right of free speech"), .003(a). We conclude that appellees' lawsuit is based on or in response to appellants' exercise of their right of free speech and thus need not consider whether the lawsuit was based on appellants' exercise of their right of association.

The TCPA defines the exercise of the right of free speech as "a communication made in connection with a matter of public concern," with a "communication" being "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1), (3). A matter of public concern is broadly defined as a statement or activity regarding (a) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; (b) a matter of political, social, or other interest to the community; or (c) a subject of concern to the public. *Id.* § 27.001(7). The parties do not dispute that publication of the Report constituted a communication; they join issue, however, on whether publication of the Report was in connection with a matter of public concern. Whether speech is a matter of public concern

5

is a question of law. *Klentzman v. Brady*, 456 S.W.3d 239, 257 (Tex. App.—Houston [1st Dist.] 2014), *aff'd*, 515 S.W.3d 878 (Tex. 2017).

The Statements involve allegations of criminal activity by individuals and entities in a busy and popular, historic downtown area. Texas courts have generally held that criminal conduct is a matter of public concern. *See, e.g.*, *Walgreens v. McKenzie*, 713 S.W.3d 394, 401 (Tex. 2025); *Davis v. Weston*, No. 03-22-00378-CV, 2024 WL 4995724, at *8 (Tex. App.—Austin Dec. 6, 2024, no pet.) (mem. op.). Courts view the content, form, and context of allegedly defamatory statements in determining whether they were made in connection with a matter of public concern. *See Saks & Co. v. Ya Xi Li*, 653 S.W.3d 306, 316 (Tex. App.—Houston [14th Dist.] 2022, no pet.); *Kadow v. Grauerholz*, No. 02-20-00044-CV, 2021 WL 733302, at *3–4 (Tex. App.—Fort Worth Feb. 25, 2021, no pet.) (mem. op.). Here, the content, form, and context of the Statements compel the conclusion that they were made in connection with a matter of public concern. The Statements allege serious, ongoing criminal activity by several businesses and their operators in a busy and popular, historic part of downtown Austin, and the Statements were made initially to the members of the Association (who are owners of other businesses in the area) and then to the public through the media, against the backdrop of existing City Council and media attention to issues of crime in the area.

Given the general rule that criminal conduct is a matter of public concern, plus the facts that the Report involved businesses in a busy and popular part of downtown Austin in the midst of City Council and media attention to the issues of crime in that area, we conclude that the Report's publication was made in connection with a matter of public concern and that the TCPA applies.

6

*Did appellees meet their prima facie burden?*

Because appellants established that the TCPA applies to appellees' lawsuit, the burden shifted to appellees to establish by clear and specific evidence a prima facie case for each essential element of their defamation claim.[4] *See* Tex. Civ. Prac. & Rem. Code § 27.005(c). To establish a claim for defamation, a plaintiff must show (1) the publication of a false statement of fact to a third party; (2) that was defamatory concerning the plaintiff; (3) made with the requisite degree of fault; and (4) damages, in some cases. *See In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (orig. proceeding).

When a plaintiff alleges defamation per se, she need not prove the fourth element because the statements are so obviously harmful that damages, such as mental anguish and loss of reputation, are presumed. *Id.* at 596. Appellees allege that the Statements constitute defamation per se, and we agree. *See id.* (stating that "[a]ccusing someone of a crime, of having a foul or loathsome disease, or of engaging in serious sexual misconduct are examples of defamation per se"); *Van der Linden v. Khan*, 535 S.W.3d 179, 198 (Tex. App.—Fort Worth 2017, pet. denied). Therefore, to determine whether appellees' defamation action survived appellants' motion to dismiss, we look only for clear and specific evidence as to the first, second, and third elements.

We first address the second element. Appellants contend that the Statements are not defamatory *as to Bucio* because she is not mentioned in the Report and there is no

---

[4] Because statutory libel subsumes the elements of common-law defamation and specifically occurs when the defamatory statements are in writing, as alleged here, we need not analyze libel separately. *See Austin v. Amundson*, No. 05-22-00066-CV, 2022 WL 16945911, at *7 (Tex. App.—Dallas Nov. 15, 2022, no pet.) (mem. op.) (noting that statutory libel "is a subset of defamation and means defamation in writing").

"indication that the reasonable reader would associate" the Statements with her individually.[5] But appellants' own evidence—in the form of social-media posts and online media articles—demonstrates that Bucio is publicly associated with her various hospitality businesses, including Mala Fama and Mala Vida, and that a person who knew or was acquainted with her would understand from viewing the Statements that the defamatory matter referred to her. *See Newspapers, Inc. v. Matthews*, 339 S.W.2d 890, 894 (Tex. 1960) ("[I]t is not necessary that the individual referred to be named if those who knew and were acquainted with the plaintiff understand from reading the publication that it referred to plaintiff."); *Vice v. Kasprzak*, 318 S.W.3d 1, (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("It is not necessary that the plaintiff be specifically named in the communication to be defamatory, but it must be clear to those who know and are acquainted with him that the defamatory statement is directed to him.") (citing *Cox Tex. Newspapers, L.P. v. Penick*, 219 S.W.3d 425, 433 (Tex. App.—Austin 2007, pet. denied)). The plaintiff need not prove that the defendant intended to refer to her, and whether a communication "references" a plaintiff is a question of law. *Vice*, 318 S.W.3d at 13.

The Statements allege that the persons or entities who are "in ultimate control" of Mala Fama and Mala Vida are involved in a criminal enterprise, that Mala Fama and Mala Vida "own and control" the unlicensed bar Space Siete, and that Mala Fama and Mala Vida should be investigated for specified criminal activities including money laundering of drug proceeds

---

[5] Appellants do not contend that the Statements are not defamatory as to the LLC, and it is settled law that legal entities have reputations and may recover for defamatory statements directed at their professional reputation and practices. *See Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 419 (Tex. 2020). Additionally, when a statement is defamatory as to a business, it is the business's *owner* that courts deem as having standing to sue for the defamation and that suffered damages. *Waste Mgmt. of Tex., Inc. v. Texas Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 150 n.35 (Tex. 2014). It is undisputed that the LLC owns Mala Vida and Mala Fama.

related to cartel activity. Like any entertainment establishment, nightclubs do not operate themselves, and a reasonable reader of the Statements would understand them to be defamatory as to the operators of Mala Vida and Mala Fama. The articles and social-media posts that appellants attached to their motion demonstrate that Bucio manages and operates Mala Vida and Mala Fama. Moreover, appellants' evidence demonstrates that Bucio is one of the members and managers of the LLC, and appellees' pleadings allege that the LLC owns and operates Mala Vida and Mala Fama. We conclude that the pleadings and evidence demonstrate that members of the public who know or are acquainted with Bucio would have reasonably understood the Statements to be referring to her. We conclude that appellees met their prima facie burden as to the second element.

We next address the third element, as our determination thereof guides our analysis of the first element. The status of the person allegedly defamed determines the requisite degree of fault: a private plaintiff need only prove negligence, whereas a public figure or official must prove actual malice, that is, that the statement was made with knowledge of its falsity or with reckless disregard for its truth. *Lipsky*, 460 S.W.3d at 593. Public figures fall into two categories: (1) all-purpose, or general-purpose, public figures; and (2) limited-purpose public figures. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). General-purpose figures are those individuals who have achieved such pervasive fame or notoriety that they become public figures for all purposes and in all contexts. *Id.* Limited-purpose public figures are only public figures for a limited range of issues surrounding a particular public controversy. *Id.* Appellants contend that Bucio and the LLC are limited-purpose public figures.

A plaintiff is a limited-purpose public figure if three conditions are met: (1) the controversy at issue must be public both in the sense that people were discussing it and people

9

other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must have more than a trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy. *Id*. To determine if the plaintiff's role in the controversy was more than tangential, a court examines whether the plaintiff (1) actually sought controversy, (2) had access to the media, and (3) voluntarily engaged in activities that necessarily involved the risk of increased exposure and injury to reputation. *Klentzman v. Brady*, 312 S.W.3d 886, 905 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing *McLemore*, 978 S.W.2d at 572–73).

As to this requirement, the supreme court has noted, "By publishing your views you invite public criticism and rebuttal; you enter voluntarily into one of the submarkets of ideas and opinions and consent therefore to the rough competition in the marketplace." *McLemore*, 978 S.W.2d at 573. A person does not become a public figure merely because she is "discussed" repeatedly by a media defendant or because her actions become a matter of controversy as a result of the media defendant's actions. *Klentzman*, 312 S.W.3d at 905. Even engaging in criminal conduct does not make a person a limited-purpose public figure. *Id.* Rather, a defamation defendant must show that the plaintiff "relinquished . . . his interest in the protection of his own name" by "engag[ing] the attention of the public in an attempt to influence the resolution" of "an[] issue of public concern." *Id.* (citing *Wolston v. Reader's Dig. Ass'n, Inc.*, 443 U.S. 157, 168 (1979)).

The question of public-figure status is one of constitutional law for the courts to decide, *McLemore*, 978 S.W.2d at 571, and it is the defendant's burden to establish that a defamation plaintiff is a public figure, *see Klentzman*, 312 S.W.3d at 905 (concluding that defendant had not met summary-judgment burden to establish as matter of law that plaintiff

10

was limited-purpose public figure). We conclude that appellants did not meet their burden to establish that Bucio and the LLC are limited-purpose public figures. In making this determination, we must first identify the alleged public "controversy" at issue. *See McLemore*, 978 S.W.2d at 572. A public controversy is a dispute that in fact has received public attention because its ramifications will be felt by persons who are not direct participants. *Mohamed v. Center for Security Pol'y*, 554 S.W.3d 767, 774 (Tex. App.—Dallas 2018, pet. denied); *see also* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/controversy (defining "controversy" as "a discussion marked especially by the expression of opposing views: dispute") (last visited Oct. 21, 2025). The supreme court recently looked to the D.C. Circuit for assistance in determining the existence and scope of a public controversy:

> To determine whether a controversy indeed existed and, if so, to define its contours, the judge must examine whether the persons actually were discussing some specific question. A general concern or interest will not suffice. The court can see if the press was covering the debate, reporting what people were saying[,] and uncovering facts and theories to help the public formulate some judgment.

*See McLemore*, 978 S.W.2d at 572 (quoting *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1297 (D.C. Cir. 1980)).

Appellants contend that the public controversy here is "the issue of crime and illegal alcohol sales in the area of East Sixth Street" and the "character and development" of the area, which "has garnered substantial public attention, including that of the press and the City Council." But public and media *attention* around an issue does not equate to public *controversy*. As evidence of this alleged public controversy, appellants cite resolutions by the City Council to make the East Sixth Street area safer and to reduce violence and crime there and the Association's repeated complaints to law enforcement about after-hours liquor sales in the area

11

seemingly to no avail. But the City Council's efforts or intention to combat crime and violence in the area and the Association's complaints to law enforcement about criminal activity do not indicate there was a public debate or dispute about any particular issue, much less do those facts evince that there were persons in the public sphere opposing the City's efforts and thus making the issue a debate or dispute.

However, even assuming that the "issue of crime and illegal alcohol sales" in the East Sixth Street Area constituted a public controversy, appellants have identified no evidence supporting their contention that Bucio or the LLC have engaged the attention of the public in an attempt to influence the resolution of that area's crime activity or illegal alcohol sales or that Bucio or the LLC have any role whatsoever in the controversy, much less that they have any role more than a tangential one. *Id.* at 571. Appellants cite evidence attached to their TCPA motion comprising social-media posts and online media articles (predating the Report's publication) profiling Bucio, her success, and her various businesses, including Mala Vida. Having reviewed this evidence, we cannot reasonably conclude that Bucio or the LLC were thereby publishing their views on crime and illegal alcohol sales in the area, engaging the attention of the public to influence resolution of the issue of crime in the area, or thrusting Mala Vida and Mala Fama into the alleged public controversy of crime and illegal alcohol sales in the East Sixth Street area. *See Klentzman*, 312 S.W.3d at 905. We hold that appellants did not meet their burden to establish that Bucio and the LLC are limited-purpose public figures.

Having determined that, for purposes of our TCPA-motion review, Bucio and the LLC are private individuals, we consider whether Bucio and the LLC established a prima facie case that appellants acted with negligence in publishing the Statements. In the defamation context, negligence is "the failure to investigate the truth or falsity of a statement before

12

publication, and the failure to act as a reasonably prudent person." *Hoskins v. Fuchs*, 517 S.W.3d 834, 842 (Tex. App.—Fort Worth 2016, pet. denied). Reasonableness entails an objective inquiry about what a person of ordinary sensibilities would do and presents a question of law when from the facts in evidence only one rational inference can be drawn. *See Freeport-McMoRan Oil & Gas LLC v. 1776 Energy Partners*, 672 S.W.3d 391, 399 (Tex. 2023). "Inherently improbable assertions and statements made on information that is obviously dubious may show actual malice, and that which is probative of actual malice tends to show the lesser state of negligence as well." *Maggret v. Ramsey's Rods & Restoration*, No. 02-20-00395-CV, 2021 WL 2253244, at *3 (Tex. App.—Fort Worth June 3, 2021, no pet.) (mem. op.) (citing *Bentley v. Bunton*, 94 S.W.3d 561, 596 (Tex. 2002)).

Appellees cite as "improbable" and "dubious" the Statements in the Report, which they contend are unsupported by any factual observations, as evidence that appellants failed to act as reasonably prudent persons in publishing the Statements. Regarding Mala Fama, appellees argue that the "only factual observances" reported by Stokke in either report concerning that establishment are the following: (1) as stated in the Investigative Log, during the investigation, a Stokke associate was asked if he wanted to purchase crack cocaine *in an alley behind* Mala Fama; and (2) as stated in the Report, employees at Mala Fama did not effectively pat down customers and prevented "a known police officer from entering the establishment with a weapon." The inferential leap from those two factual observations to the conclusions that a criminal enterprise is involved in the ultimate control of Mala Fama and that Mala Fama should be investigated for money laundering, cartel activity, underage drinking, and subterfuge ownership is simply too great to not elicit further investigation by a reasonably prudent person. Regarding Mala Vida, Bucio, and the LLC, appellees argue that Stokke reported *no* factual

13

observations about any of those three in either report, and, having reviewed the record, we agree with appellees. Without any factual observations about Mala Vida, Bucio, or the LLC, it again follows that the inferential leap is too great to not elicit further investigation on the part of appellants.

Also, although Stokke asserts in his Report that Mala Fama and Mala Vida have "ties" to the unlicensed bar Space Siete—the "illegal after hours club they own and control"— nowhere therein (or in the Investigative Log) does Stokke explain any factual observations from which he could reasonably have made such inference. Albeit there is one statement in Stokke's affidavit that attempts to tie Mala Fama and Mala Vida to Space Siete: he avers that his associates "observed employees of Mala Fama and Mala Vida leaving work at those establishments to set up shop at Space Siete and directing customers of Mala Fama and Mala Vida to move over to Space Siete after 2:00 a.m." However, there is no evidence that the Association and Cirkiel knew about these observations; therefore, this averment cannot support any finding that the Association and Cirkiel acted as reasonably prudent persons in publishing the Report. More importantly, the observations do not reasonably support the inference that a criminal enterprise is involved in the ultimate control of Mala Fama and Mala Vida or that they should be investigated for narcotics and cartel activity, money laundering, and illegal alcohol sales. Furthermore, that employees of one establishment are also employees of another establishment and that said employees direct customers to the other establishment after closing hours does not, without more, indicate a connection between ownership or control of the two establishments. Viewing the evidence in appellees' favor, as we must, *see Warner Bros. Ent., Inc. v. Jones*, 538 S.W.3d 781, 801 (Tex. App.—Austin 2017), *aff'd*, 611 S.W.3d 1 (Tex. 2020), we conclude that appellees established a prima facie case that appellants did not act as

14

reasonably prudent persons in publishing the Statements without having any factual support for them.

Having determined that appellees established a prima facie case that appellants were negligent in publishing the Report, we turn to the remaining element we must address in this appeal: whether appellants made false statements of fact. Appellants contend that appellees did not establish a prima facie case that the Statements were (1) false statements (2) of fact, rather than of mere opinion. We turn first to the legal question of whether the Statements are opinions or facts. *See Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 639 (Tex. 2018) (noting that determination of whether particular statement is opinion or fact is question of law).

Statements that are not verifiable as false cannot form the basis of a defamation claim, and in determining whether a statement is verifiable as false, courts must look at the entire context in which it was made. *Id.* Even when a statement is verifiable as false, it does not give rise to liability if the "entire context in which it was made" discloses that it is merely "an opinion masquerading as fact." *Id.* Thus, statements that cannot be verified, as well as statements that cannot be understood to convey a verifiable fact, are non-actionable opinions. *Id.* We classify a statement as fact or opinion based on the verifiability of the statement and the entire context in which the statement is made. *Bentley*, 94 S.W.3d at 581. Furthermore, even a statement conveying a person's opinion can be actionable in defamation "if it expressly or impliedly asserts facts that can be objectively verified." *Avila v. Larrea*, 394 S.W.3d 646, 658 (Tex. App.—Dallas 2012, pet. denied).

The context of the Report is that the statements and conclusions therein are supported by Stokke's investigation and factual observations. *See Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 795 (Tex. 2019) ("[T]he context of the editorial indicates that it is not

15

simply opinion masquerading as fact."). Although some of the statements, viewed in isolation, allege vague criminal activity in general that might prove difficult to verify—such as challenged Statement No. 2 that those persons or entities in ultimate control of Mala Vida and Mala Fama are part of a "criminal enterprise" and challenged Statement No. 1 that "a criminal element has taken over the area"—when viewed in the entire context of the Report, it becomes clear that the Report concludes that the owners or operators of Mala Vida and Mala Fama, via Space Siete, are involved in money laundering for a cartel, narcotics activity, and violations of liquor laws including selling liquor to minors during unauthorized hours and without a permit.

The gist of the Report is that the persons or entities who ultimately control Mala Vida and Mala Fama, who also own and operate Space Siete, are involved in the enumerated criminal activities through the alleged illegal activities occurring at Space Siete. Whether such statements of criminal activity are true or false can be verified; they are not mere opinions and are not opinions masquerading as fact. And while, in isolation, other portions of the Statements—such as "nonchalantly going through the motions and not effectively patting down customers" and "if I was supervising this area with TABC, I would start an investigation into these establishments"—resemble opinions more than facts, we conclude that in their proper context, they support the overall verifiable factual gist of the Report: Mala Vida and Mala Fama, via the persons or entities who in fact control both of them and the purportedly unlicensed bar Space Siete, are engaged in money laundering of cartel drug proceeds and in violating liquor laws.[6]

_____

[6] In this same issue, appellants also contend that the Statements are not defamatory as to Bucio because she is not mentioned in the Report and there is no "indication that the reasonable reader would associate" the Statements with her individually. However, appellants' own evidence—in the form of social-media posts and online media articles—demonstrates

16

We now consider whether the Statements were false. This Court has previously determined that when reviewing the denial of a TCPA motion in cases involving private plaintiffs suing nonmedia defendants, as here, falsity of the challenged statements is presumed. *See Zilkha-Shohamy v. Corazza*, No. 03-20-00380-CV, 2021 WL 3009034, at *5 (Tex. App.—Austin July 16, 2021, pet. denied) (mem. op.). Because of this presumption, appellees were not required to establish a prima facie case as to whether the alleged defamatory statements were false. *See id.* We conclude on this record that appellees satisfied their burden to establish a prima facie case for defamation and accordingly overrule appellants' first issue.[7]

### *Must appellees' claims against Cirkiel be dismissed?*

Appellants argue that even if appellees met their burden as to their claims against the Association, their claims against Cirkiel cannot proceed because their entire case against him is based on his alleged activities as the Association's President and non-voting Chairman of its Board and his purported "control" over the Association's actions, yet he enjoys protection from personal liability under the Texas Business Organizations Code. *See* Tex. Bus. Orgs. Code §§ 22.221(b), .235(a). Sections 22.221 and 22.235 provide that a director or officer is not liable to a person for actions that were taken in good faith, with ordinary care, and in a manner the director or officer reasonably believed to be in the corporation's best interest. *See id.* §§ 22.221(b), .235(a).

---

that Bucio is publicly associated with her various hospitality businesses, including Mala Fama and Mala Vida. Therefore, defamatory statements as to those businesses and their operators necessarily defame her too.

[7] We need not address appellants' second issue, in which they contend that the trial court erred in either failing to rule on their objections or in overruling their objections to the affidavits of Bucio and Cook because the evidence contained in the affidavits is not relevant to the issues dispositive to this appeal.

17

A plaintiff seeking to establish liability of the director or officer of a nonprofit corporation must prove that the person did *not* act in those three manners. *Green v. Port of Call Homeowners Ass'n*, No. 03-18-00264-CV, 2018 WL 4100855, at *5 (Tex. App.—Austin Aug. 29, 2018, no pet.) (mem. op.) (holding that safe harbor for officers of nonprofit corporation is not affirmative defense but issue on which plaintiff bears burden of proof). Appellees therefore bear the burden to prove that in publishing the Report, Cirkiel did not act (1) in good faith, (2) with ordinary care, and (3) in a manner he reasonably believed would be in the Association's best interest. *See Burns v. Seascape Owners Ass'n, Inc.*, No. 01-11-00752-CV, 2012 WL 3776513, at *9–10 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, no pet.) (mem. op.) (holding that to defeat no-evidence summary-judgment motion, plaintiffs bore burden of establishing fact issue on each of those three elements).

Appellants argue that appellees in their response to the TCPA motion "did not even try to present clear and specific evidence" on these elements, instead relying on the legal argument that Cirkiel cannot claim the safe harbor because the Association had forfeited its corporate status at the time the Report was published, citing Section 171.255 of the Tax Code.[8] That section provides, relevantly,

---

[8] It is undisputed that the Association lost its corporate status in February 2024. Appellants contend that the Association's certificate of formation was properly reinstated after publication of the subject Statements, and the website for the Texas Comptroller of Public Accounts confirms that its status is currently active. *See comptroller.texas.gov/taxes/franchise/ account-status/search/32015686903* (last visited Oct. 21, 2025). The Association cites its retroactive reinstatement as an additional reason why Cirkiel is not individually liable, but we need not reach this issue based on our consideration of its other reasons. *See* Tex. Bus. Orgs. Code § 11.255(a) ("A nonprofit corporation whose certificate of formation is reinstated under Section 22.365 is considered to have continued in existence without interruption from the date of termination.").

18

> If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived. . . .

Tex. Tax Code § 171.255(a). But, as appellants respond, Section 171.255 applies only to corporations that are required to pay franchise taxes, and nonprofits such as the Association are not. *See id.* §§ 171.251 ("The comptroller shall forfeit the corporate privileges of a corporation on which the franchise tax is imposed if the corporation . . . ), .252 ("If the corporate privileges of a corporation are forfeited under this subchapter [F] . . . each director and officer of the corporation is liable for a debt of the corporation as provided by Section 171.255."); *see also id.* § 171.063(a)(1) (providing that nonprofit corporations exempted from federal income tax under Internal Revenue Code Section 501(c)(6), among other provisions, are exempted from franchise tax). As a matter of law, the Association's temporary forfeiture of its corporate status during the period at issue does not affect Cirkiel's ability to rely on the safe-harbor provision in Business Organizations Code Sections 22.221 and 22.235.

Moreover, even if Tax Code Section 171.255 were to apply to the Association, it would not expose Cirkiel to personal liability because there is no alleged "debt" that was incurred during the period of forfeited status that was owed to appellees. A debt is "any legally enforceable obligation to a certain amount of money which may be performed or paid within an ascertainable period of time or on demand." *Williams v. Adams*, 74 S.W.3d 437, 439 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied). In the context of a tort claim, as here, there is no "debt" until there is a judgment. *See Benbow v. Al-Barnawi*, No. 13-20-00131-CV, 2021 WL 3556214, at *1 (Tex. App.—Corpus Christi–Edinburg Aug. 12, 2021, no pet.) (mem. op.).

We sustain appellants' issue concerning whether appellees' claims may proceed against Cirkiel and render judgment granting appellants' TCPA motion as to the claims against Cirkiel. Because Cirkiel is entitled to an award of attorneys' fees, we remand for further proceedings on that issue. *See* Tex. Civ. Prac. & Rem. Code § 27.009.

## CONCLUSION

We reverse the trial court's ruling by operation of law that denied appellants' motion to dismiss as to Cirkiel, render judgment granting appellants' motion as to appellees' claims against Cirkiel, and remand for further proceedings on attorneys' fees. We affirm the trial court's ruling by operation of law that denied the Association's TCPA motion.

_____

Karin Crump, Justice

Before Chief Justice Byrne, Justices Crump and Ellis

Affirmed in Part; Reversed and Rendered in Part; Remanded

Filed: October 23, 2025